**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Shanique Perez,<br>3091 Suitland Road #509<br>Suitland, MD 20746 )<br><br>Plaintiff, )<br><br>v. )<br><br>KIPP DC SUPPORTING CORPORATION )<br>d/b/a KIPP DC – SHAW QALICB, INC., )<br>d/b/a KIPP DC – DOUGLAS QALICB )<br>Serve:  C T Corporation System )<br>  1015 15th St NW, Suite 1000 )<br>  Washington, D.C.  20005 )<br>Also Serve:  KIPP DC Headquarters )<br>   2600 Virginia Ave NW, Suite 900 )<br>   Washington, D.C.  20037 )<br><br>  and )<br><br>CAPITAL CITY PUBLIC CHARTER SCHOOL, )<br>INC., )<br>Serve:  Karen Dresden )<br>  3047 15th Street, NW )<br>  Washington, D.C.  20009 )<br><br>  and )<br><br>ALAN WADE COLEMAN, Individually, and as )<br>an Agent of KIPP DC and CAPITAL CITY )<br>PUBLIC CHARTER SCHOOL )<br>7014 Northwest 39th Ave )<br>Gainesville, FL  32606 )<br><br>  and )<br><br>SUSAN SCHAEFFLER ETTINGER, Individually, )<br>and as an Agent of KIPP DC )<br>609 Highland Avenue )<br>Falls Church, VA 22046 )<br>  and )<br><br>DEFENDANTS ROE (1-10) Being the fictitious )<br>names of agents and employees of KIPP DC and )<br>Capital City Charter School who are not presently )<br>known to Plaintiff, ) | Case No. 21-cv-929 |

Defendants.                              )

## COMPLAINT AND JURY DEMAND

**NOW COMES** the Plaintiff, Shanique Perez, by and through her attorneys, Ketterer Browne & Anderson, LLC and Clinton & Peed, PLLC, and brings forth this Complaint against the Defendants, KIPP DC Supporting Corporation, Capital City Public Charter Schools, Inc., Alan Wade Coleman, Susan Schaeffler Ettinger, and Defendants Roe 1-10, and in support sets forth the following:

## PARTIES

1.      Plaintiff Shanique Perez is an adult resident of the state of Maryland, a citizen of the United States of America, and at all times relevant to this Complaint, was a minor under the age of 18 during the time of the sexual abuse alleged in this Complaint.

2.      At all relevant times, Defendants KIPP DC Supporting Corporation d/b/a KIPP DC – Shaw QALICB, Inc., and d/b/a KIPP DC Douglas QALICB (hereafter "Defendant KIPP DC") was a not-for-profit network of college-preparatory public charter schools authorized to conduct business in the District of Columbia. Defendant KIPP DC maintains its principal place of business at 2600 Virginia Avenue NW, Suite 900, Washington, D.C. 20037.

3.      At all relevant times, Defendant Capital City Public Charter School, Inc., (hereafter "Defendant Capital City") was a not-for-profit public charter school authorized to conduct business in the District of Columbia.  Defendant Capital City maintains its principal place of business at 100 Peabody Street, NW, Washington, D.C. 20011.

4.      Defendants KIPP DC and Capital City will be referred to collectively as the "School Defendants."

5.     Defendant Alan Wade Coleman (hereafter "Defendant Coleman") is an adult male and a convicted sex offender, currently incarcerated with the District of Columbia Department of Corrections. At all times relevant to this Complaint, Defendant Coleman was an employee, servant, and/or real, apparent and/or ostensible agent of Defendants KIPP DC and Capital City, acting within the scope of his employment, service and/or agency; and licensed to teach in the District of Columbia.

6.     Defendant Susan Schaeffler Ettinger (hereafter "Defendant Ettinger") is an adult, whose residence will be determined during discovery. During the 2004-2005 academic year, Defendant Ettinger was the principal at, and a founder of, Defendant KIPP DC, and she was an employee, servant, and/or real, apparent and/or ostensible agent of Defendant KIPP DC, acting within the scope of her employment, service and/or agency.

7.     Defendant Roes 1-10 are as yet unidentified administrators, officials, employees, agents, or persons otherwise affiliated with the above-named defendants who violated Plaintiff's Constitutional rights and other federal and state laws, causing injury to Plaintiff.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.*

9.     This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the federal claims in this action.

10.     This Court also has subject matter jurisdiction over this matter pursuant to

28 U.S.C. §1332 because the Plaintiff and at least one of the Defendants are citizens of different states and the amount in controversy exceeds $75,000.

11.     This Court also has personal jurisdiction over this matter pursuant to §13-423 of the D.C. Code because the Defendants caused a tortious injury in the District of Columbia by an act and/or omission committed in the District of Columbia.

12.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions alleged herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Introduction and Background

13.     Shanique Perez was a student at Defendant KIPP DC in Washington, D.C., from on or about 2001 to 2005. Beginning in 2004, when she was 14 years old, and continuing until 2009, Shanique Perez suffered an abusive and coercive relationship, which included sexual abuse, perpetrated by Defendant Alan Wade Coleman, a teacher at KIPP DC.  Defendant Coleman worked at Defendant KIPP DC until 2005, when he became employed as a teacher at Capital City Public Charter School. In or about 2007, when she was 16 years old, until the termination of the abusive relationship in June 2009, Plaintiff lived with Defendant Coleman at his home in Montgomery County, Maryland.

14.     Defendant Coleman was a 34-year-old man when he began his abuse of Plaintiff. Coleman entered into a plea agreement and pled guilty to sex abuse of a minor in Montgomery County, Maryland, in July 2017. Defendant Coleman entered into a plea agreement and pled guilty to first-degree child sex abuse in the District of Columbia in August 2017. These plea agreements and guilty pleas were the result of criminal charges filed against Defendant Coleman in the respective jurisdictions, in connection with his sexual abuse of Plaintiff.

15.     Coleman began his manipulation of Shanique Perez in 2004, when she was 14 years old and in the eighth grade at KIPP DC. He seduced and groomed Shanique with gifts, and offers of support and guidance, taking advantage of her immaturity and vulnerability.  When he had gained her trust, in or about January 2005, Coleman began to sexually abuse Shanique, and continued sexually abusing her for nearly five years. Coleman repeatedly abused Shanique sexually and he sodomized her. Coleman took Plaintiff on trips, some of which were across state lines, during which he sexually abused and sodomized her. Coleman caused Shanique to be isolated from her mother and other authority figures and dominated and controlled her daily activities.  In or about June 2007, Coleman had Shanique, a minor, leave her mother's house to live with him at his home in Montgomery County, Maryland.

16.     While Defendant Coleman subjected Shanique to an adolescence of unending sexualabuse and rape, KIPP DC and Capital City Charter School administrators, teachers, and staff knew and/or should have known that Coleman engaged in egregiously inappropriate misconduct against Plaintiff.

17.     Defendant Susan Ettinger, principal, and a founder, of KIPP DC, knew, *inter alia*, when Shanique was in the eighth grade, that Coleman had an on-going inappropriate sexual relationship with Shanique. Defendant Ettinger and KIPP DC called Child Protective Services during 2003-2004 school year for possible neglect on Shanique's mother; however, at this time failed to undertake an independent investigation, failed to take any action to stop the abusive sexual abuse and to protect Shanique from Coleman's sexual abuse.

18.     In or about the academic school year 2004-2005, Plaintiff's mother informed the principal at KIPP DC that Defendant Coleman was living with her minor daughter and engaging in sexual relations with her. Defendants KIPP DC did not renew his contract after Spring 2005.

Capital City Charter School terminated Defendant Coleman's employment in 2015, but failed to undertake an independent investigation, failed to take any action to protect Shanique, and failed to take any action to stop Coleman's sexual abuse of Shanique.

19.     Defendants KIPP DC, Capital City Charter School Board, Ettinger, and Defendants Roes 1-10 (collectively, "School Defendants") turned a blind eye to Defendant Coleman's blatant sexual misconduct against Shanique. They failed to take a single step to investigate reports of Coleman's inappropriate relationship with Shanique, curtail his access to Plaintiff, report him to the appropriate authorities, or protect Shanique and remediate the five years of sexual abuse that Coleman committed against Shanique. School Defendants created and fostered an environment in which Plaintiff was vulnerable and subjected to Coleman's appalling sexual abuse.

20.     As a consequence of his guilty plea in the District of Columbia, Defendant Coleman has been sentenced to a prison term and probation upon release.

21.     Coleman's sentence in the criminal case in Montgomery County, Maryland, will run concurrently with his District of Columbia sentence.

22.     Plaintiff Shanique Perez seeks recovery for the damages she has suffered as a result of Defendants' violations of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.*, and their actions of negligence, negligent hiring, training, and supervision and other tortious conduct in violation of District of Columbia statutory laws and common law.

**Plaintiff and Defendant Coleman Meet and Defendant Coleman Begins Abusing Plaintiff**

23.     In or about 2000 through 2005, Plaintiff was a student at Defendant KIPP DC.

24.     In or about the academic year 2003-2004, Defendant Coleman came to know Plaintiff as a student in his 8th grade science class. Coleman also taught Plaintiff history and became her drumline coach/instructor.

25.     Soon thereafter, Plaintiff became Defendant Coleman's teacher assistant.

26.     Defendant Coleman used this time alone with Plaintiff to lavish her with attention and compliments in an effort to groom her for his personal satisfaction and gain.

27.     On or around November 23, 2004, Defendant Coleman took Plaintiff on their "first date", while he was still Plaintiff's teacher.

28.     In December 2004, Defendant Coleman took Plaintiff's virginity, consummating their sexual relationship at his home in Takoma Park, Maryland.

29.     Later that month, Defendant Coleman's condom broke during intercourse with Plaintiff. Defendant Coleman took Plaintiff to a CVS in Silver Spring, Maryland, and demanded that she purchase and take the "Plan B" contraceptive pill (commonly known as the "morning after pill"), in an effort to prevent Plaintiff from becoming pregnant.

30.     Thereafter, Defendant Coleman engaged Plaintiff in sexual intercourse approximately every day, or every other day.

31.     Defendant Coleman often coerced and pressured Plaintiff into having sex with him, for example, often yelling at Plaintiff to intimidate her into having sexual intercourse.

32.     Defendant Coleman would also perform sexually derogatory acts upon the person of Plaintiff, routinely tying her up, forcing her to wear costumes during sex acts, spitting on her, urinating on her and ejaculating on her.

33.     Defendant Coleman sexually exploited and abused Plaintiff from in or about November 2004 until in or about June 2009.

34.     Defendant Coleman's abuse and rape of Plaintiff continued into the following academic year at KIPP DC, where Defendant continued to teach Plaintiff history and coach her in drumline.

35.     Defendant Coleman took Plaintiff, then a minor, on numerous trips, often across state lines, where he repeatedly sexually abused her.

36.     In or about the Spring 2005, Plaintiff was promoted to ninth grade. In or about Fall 2006, Plaintiff began the ninth grade and she enrolled in another school.

37.     In the Spring of 2006, Plaintiff earned a full scholarship to the Philips Exeter Academy in New Hampshire, a prestigious institution. Defendant Coleman told Plaintiff that she was forbidden to attend the school because it would require Plaintiff to move away from him.

38.     In or about 2007, Defendant Coleman manipulated Plaintiff and persuaded her to livewith him at his home in Montgomery County, Maryland.

39.     Defendant Coleman did not have legal custody or guardianship of Plaintiff. When Plaintiff's mother tried to intervene, she was told that Plaintiff was above the age of consent and could make this decision on her own. No one had notified the authorities that Plaintiff was being raped by her teacher.

40.     While Plaintiff lived with Defendant Coleman, he and Plaintiff slept in the same room and bed. Defendant Coleman sexually abused Plaintiff on a nearly nightly basis by, among other things, having sexual relations and sodomizing her.

**The School Defendants Turn a Blind Eye**

41.     At all times relevant hereto, Defendant KIPP DC represented that Defendant Coleman was a qualified teacher and person of high ethical and moral standing who would competently and responsibly assume the care and supervision of his students, including but not limited to Plaintiff. Based upon these representations, Plaintiff's mother reasonably believed Defendant Coleman was a person worthy of her trust, and did in fact entrust Plaintiff to the care of Defendant KIPP DC, and by virtue, Defendant Coleman.

42.     As a student at KIPP DC, Plaintiff was under Defendant Coleman and Defendant KIPP DC's direct supervision, care and control, thus creating a special, fiduciary relationship, and/or special care relationship between Plaintiff and Defendants. Additionally, as a minor child under their care, custody and control, Defendant Coleman and Defendant KIPP DC stood in loco parentis with respect to Plaintiff while she was attending school and school-related functions.

43.     Through his employment at KIPP DC, Defendant Coleman used his position of authority and trust to gain the confidence, friendship, and eventually, the admiration of Plaintiff.

44.     Using his position of authority and trust at KIPP DC, Defendant Coleman also sought and gained the trust of Plaintiff's mother. Plaintiff's mother worked long hours, and, on occasion, would allow Defendant Coleman to care for Plaintiff in the role of teacher's aide before and after school. Due to his position at Defendant KIPP DC, Plaintiff's mother entrusted Plaintiff to the care of Defendant Coleman, under the assumption that Coleman was assisting Plaintiff with her studies and adjustment in school.

45.     Defendant Coleman began sexually abusing Plaintiff during the 2004-2005 academic year, and he continued his relentless assault and abuse against Plaintiff for the next five years.

46.     At all times relevant hereto, Defendant Coleman's contact, relationship, and interaction with Plaintiff arose from Coleman's position as an employee of Defendant KIPP DC Coleman misused his authority over Plaintiff as a school employee to sexually abuse the minor.

47.     Defendant Ettinger had supervisory duties and responsibilities with respect to Coleman, and Ettinger had the ability and duty to take corrective action to protect Plaintiff.

48.     Defendant Ettinger took no action to supervise, monitor, or investigate Defendant Coleman's interactions with Plaintiff, did not monitor Defendant Coleman's activities, and failed

to take any action to curtail Defendant Coleman's unrestricted and unsupervised access to Plaintiff.

49.     Defendants KIPP DC and Ettinger allowed Defendant Coleman to have unsupervised and unrestricted contact with Plaintiff at all times of the year, including before and after school, on weekends, and end of the year class field trip to New York City at the end of the 2003-2004 academic year.

50.     Based on information and belief, Defendant Ettinger was suspicious that Defendant Coleman was having inappropriate sexual relations with Plaintiff and discontinued his contract of employment with KIPP DC.

51.     Based on information and belief, Defendant Ettinger informed a board member at Defendant Capital City of her suspicions.

52.     Defendant Ettinger and Defendant Capital City failed to undertake an independent investigation and failed to take any action to protect Plaintiff from Coleman's sexual abuse or stop the abuse.

53.     Defendant Capital City had supervisory duties and responsibilities with respect to Defendant Coleman, had the ability and duty to take corrective action to protect Plaintiff.

54.     Defendant Capital City took no action to supervise, monitor, or investigate Defendant Coleman's interactions with Plaintiff, did not monitor Coleman's activities, and failed to take anyaction to curtail Coleman's unrestricted and unsupervised access to Plaintiff.

55.     Based on information and belief, in or about the academic year 2005-2006 Defendant Coleman's contract of employment with Defendant KIPP DC was discontinued due to suspicious and/or allegations that he was engaged in inappropriate sexual relations with Plaintiff. Defendant Coleman then became employed at Defendant Capital City. Defendant Coleman continued his sexual relationship of Plaintiff.

56.    In or about the academic year 2006-2007, Plaintiff's mother learned of Defendant Coleman's sexual abusive of Plaintiff. She reported this abuse to Defendant Capital City. Capital City failed to take any disciplinary action again Coleman, failed to investigate the matter, failed to report his sexual abuse of Plaintiff to any authority or to take action to stop the sexual abuse.

**Plaintiff Finds the Strength to Leave the Abusive Relationship and Come Forward**

57.    By 2009, Defendant Coleman's sexual abuse and manipulation of Plaintiff became overbearing, as Defendant Coleman attempted to control every aspect of Plaintiff's life, including where should could go and with whom she could spend her time.

58.    By late fall 2009, Plaintiff ended her relationship with Defendant.

59.    On or about February 20, 2015, Plaintiff encountered Defendant Coleman through her Facebook account, questioning whether their relationship had been wrong and abusive.

60.    On or about February 25, 2015, Plaintiff came to the realization that the relationship with Defendant Coleman had been wrong and abusive and asked him to resign from his teaching position at Defendant Capital City.

61.    When Coleman did not resign from his teaching position, Plaintiff contacted Defendant Capital City and informed them of the sexually abusive relationship she had with Defendant Coleman when she was a minor.

62.    Defendant Capital City terminated Defendant Coleman shortly thereafter, but failed to notify any authority of Coleman's criminally abusive behavior. Defendant Capital City gave Defendant Coleman a reference for future employment.

63.    On or about April 2016, Plaintiff informed a former KIPP DC teacher, Laura Hardy, of the abuse she suffered at the hands of Defendant Coleman. Ms. Hardy notified the D.C. Metropolitan Police, and criminal proceedings commenced against Defendant Coleman in

Maryland and the District of Columbia.

64.    On May 11, 2016, Defendant Coleman was taken into custody by a SWAT team in his Gainesville, Florida home in connection with the allegations Plaintiff brought forward against him.

65.    On June 27, 2016, a warrant for arrest was issued from the District Court of Montgomery County, Maryland, for Defendant Coleman.

66.    On July 29, 2016, Defendant Coleman was charged with First Degree Child Sex Abuse in the District of Columbia Superior Court (*see United States v. Alan Wade Coleman*, 2016 CF1 011951).

67.    On October 20, 2016, Defendant Coleman was indicted by the state of Maryland on various criminal charges including sexual abuse of a minor in Montgomery County Circuit Court (*see* Civil Case No. 130514C).

68.    Defendant Coleman pleaded guilty to all charges brought against him and is currently incarcerated.

## CAUSES OF ACTION

### COUNT I – *Violation of 20 U.S.C. § 1681, et. seq.*
### *Title IX of the Education Amendments Act*

**Against Defendant KIPP DC**

69.    Plaintiff incorporates and realleges all paragraphs of this Complaint into this Count.

70.    During the relevant timeframe, the Defendant KIPP DC was a recipient of federal education funding within the meaning of Title IX, 20 U.S.C. § 1681(a).

71.    Defendant KIPP DC exercised substantial control over Defendant Coleman.

72.    For a period of several years, Plaintiff endured sexual assault and rape by an employee of Defendant KIPP DC who was over the age of 18. The assaults Plaintiff endured were

sufficiently severe, pervasive, and objectively offensive so as to constitute a hostile educational environment for her at KIPP DC and to effectively bar her access to educational opportunities and benefits.

73. Defendant KIPP DC was on actual notice of the sexual assaults committed on Plaintiff and the hypersexual hostile environment that existed between Defendant Coleman and Plaintiff while Plaintiff was enrolled at KIPP and in the years after she left the school. Defendant KIPP DC knew or should have known that such conduct was considered sex discrimination and was specifically prohibited by Title IX.

74. Despite being on actual notice of the assaults on Plaintiff, Defendant KIPP DC failed to take meaningful action to investigate the assault and/or to protect Plaintiff from Defendant Coleman or provide Plaintiff with a safe educational environment.

75. By their actions and inactions, Defendant KIPP DC acted with deliberate indifference to the complaints and other notice regarding the ongoing hostile education environment and sexual assault faced by Plaintiff, thereby materially impairing her ability to pursue her education at KIPP DC.

76. Specifically, in addition to the foregoing violations of Title IX, Defendant KIPP DC violated its Title IX obligations by:

   a. Failing to have a Title IX coordinator or any other person to receive complaints about gender-based discrimination, harassments, and/or assaults;

   b. Failing to have any policy for a student's reporting of sexual harassment and/or sexual assault;

   c. Failing to have a program for prevention of sexual harassment and sexual assault;

    d.   Failing to have a program or policy for investigating sexual harassment or sexual assault;

    e.   Failing to have a program or policy for offering accommodations to victims of sexual assault;

    f.   Failing to have a program or policy for preventing retaliation against those who report sexual harassment and/or sexual assault;

    g.   Failing to supervise, monitor, and/or train staff to handle reports of sexual assault appropriately and adequately; and

    h.   Through other actions, inaction, and deliberate indifference.

77.    As a direct and proximate cause of Defendant KIPP DC's violations of Title IX, Plaintiff has been deprived of educational opportunities and benefits that delayed her academic attainment during her high school education and thereafter. This deprivation was the result of Defendant's deliberate indifference to the hostile educational environment at KIPP DC.

78.    As a direct and proximate cause of Defendant KIPP DC's violation of Title IX, Plaintiff has experienced and will likely continue to experience severe emotional distress accompanied by objective physical manifestations and/or symptoms (such as nausea, vomiting, elevated heart rate, sweating, nightmares, night terrors, and inability to sleep), loss of functioning, impaired educational capacity, loss of earning potential, medical bills, and other pecuniary harms to be established at trial.

**WHEREFORE** Plaintiff demands compensatory damages to be proven at trial in excess of the jurisdictional amount of $75,000; all costs and expenses of this lawsuit, including attorneys' fees; enhanced compensatory damages as permitted by law; punitive damages in an amount to be determined at trial; and all other and further relief that justice may require.

## COUNT II – *Negligent Supervision and Hiring/Retention*

### Against School Defendants

79.     Plaintiff incorporates and realleges all paragraphs of this Complaint into this Count.

80.     School Defendants had a fiduciary relationship with Plaintiff as both a student and minor under the age of 18.

81.     As an educational institution, Defendant KIPP DC owed Plaintiff a special duty of trust and confidence to ensure her safety and well-being.

82.     Defendant KIPP DC, through its Board of Directors, administrators, faculty, or staff, and Defendant Capital City Charter Schools breached their duty owed to Plaintiff by, among other things:

    a.  Failing to properly protect Plaintiff, then a minor, from sexual abuse and harassment;

    b.  Improperly protecting Plaintiff, then a minor, from sexual abuse and harassment;

    c.  Failing to investigate, correct, and/or otherwise address the openly pervasive environment of sexual harassment and sexual objectification of its female students by its male teachers;

    d.  Ignoring and/or otherwise failing to properly address complaints about instances of sexual assaults occurring on the KIPP DC campus and by and between KIPP employees and students;

    e.  Failing to promptly report Plaintiff's sexual assaults to the authorities;

    f.  Failing to take any action to prevent retaliation against Plaintiff after her assaults were reported to KIPP DC;

    g.  Failing to conduct an exit interview with Plaintiff when she left the school;

h.   Failing to heed numerous warnings regarding Defendant Coleman's conduct; and

i.   Failing to supervise, monitor, and/or train staff to handle reports of sexual assault appropriately and adequately.

83.   Defendant Capital City Charter Schools and Defendant KIPP DC, through its Board of Directors, administrators, faculty, or staff, knew or should have known that it had created an opportunity for Plaintiff to be sexually assaulted and harassed and that the lack of protocols for which incidents of sexual assault were reported were woefully insufficient.

84.   The School Defendants failed to provide adequate training, monitoring, and supervision of its administrators, faculty, and/or staff concerning reports of sexual assault.

85.   Defendant KIPP DC failed to implement training and monitoring mechanisms by which sexual assaults such as those suffered by Plaintiff could have been prevented, or at the very least, appropriately reported to parents and law enforcement authorities.

86.   Defendant Capital City Charter Schools failed to appropriately investigate, screen, monitor, and respond to complaints of sexual assault and rape it had actual or constructive knowledge of concerning Defendant Coleman.

87.   The School Defendants' conduct was wanton, malicious, or oppressive in that the School Defendants disregarded or exhibited reckless indifference to the foreseeable risks of harm and acted with ill will, hatred, hostility, a bad motive, or the intent to abuse its power.

88.   As a direct and proximate cause of the School Defendants' violation of its fiduciary duty to her, Plaintiff has experienced and will likely continue to experience severe emotional distress accompanied by physical manifestations (such as nausea, vomiting, elevated heart rate, sweating, nightmares, night terrors, and inability to sleep) and other harms to be established at trial.

89.     As a direct and proximate result of the School Defendants' negligence, Plaintiff sustained serious injuries, had to undergo treatment and medical care, to incur medical expenses, incur lost wages, to lose time from her daily pursuits, to lose the ability to function normally, and she suffered impairment of her future earnings.

**WHEREFORE** Plaintiff demands compensatory damages to be proven at trial in excess of the jurisdictional amount of $75,000; all costs and expenses of this lawsuit, including attorneys' fees; enhanced compensatory damages as permitted by law; punitive damages in an amount to be determined at trial; and all other and further relief that justice may require.

## COUNT III – *Negligence*

### Against All Defendants

90.     Plaintiff incorporates and realleges all paragraphs of this Complaint into this Count.

91.     In the fall of 2004, Plaintiff enrolled at KIPP DC and was thereby deprived of the protection of her parents while on school grounds and during the school day.

92.     Upon Plaintiff's enrollment, Defendant KIPP DC assumed custody of her and other students while on the school's premises.

93.     In so doing, Defendant KIPP DC entered into a relationship with Plaintiff that imposed on it a duty of reasonable care, including, among other things, a duty of supervision to protect Plaintiff from reasonably foreseeable harm.

94.     Defendant Capital City Charter Schools, Defendant Ettinger, Defendant Roes, and Defendant KIPP DC, through its Board of Directors, administrators, faculty, or staff, breached their duty owed to Plaintiff by, among other things:

      a.  Failing to properly protect Plaintiff, then a minor, from sexual abuse and harassment;

b.   Improperly protecting Plaintiff, then a minor, from sexual abuse and harassment;

c.   Failing to investigate, correct, and/or otherwise address the openly pervasive environment of sexual harassment and sexual objectification of its female students by its male teachers;

d.   Ignoring and/or otherwise failing to properly address complaints about instances of sexual assaults occurring on the KIPP DC campus and by and between KIPP employees and students;

e.   Failing to promptly report Plaintiff's sexual assaults to the authorities;

f.   Failing to take any action to prevent retaliation against Plaintiff after her assaults were reported to KIPP DC;

g.   Failing to conduct an exit interview with Plaintiff when she left the school;

h.   Failing to heed numerous warnings regarding Defendant Coleman's conduct; and

i.   Failing to supervise, monitor, and/or train staff to handle reports of sexual assault appropriately and adequately.

95.   Defendants knew or should have known that it had created an opportunity for Plaintiff to be sexually assaulted and harassed.

96.   Defendants' conduct was wanton, malicious, or oppressive in that Defendants disregarded or exhibited reckless indifference to the foreseeable risks of harm and acted with ill will, hatred, hostility, a bad motive, or the intent to abuse its power.

97.   As a direct and proximate cause of Defendants' violation of its fiduciary duty to her, Plaintiff has experienced and will likely continue to experience severe emotional distress accompanied by physical manifestations (such as nausea, vomiting, elevated heart rate, sweating, nightmares, night terrors, and inability to sleep) and other harms to be established at trial.

98.     As a direct and proximate result of Defendants' negligence, Plaintiff sustained serious injuries, had to undergo treatment and medical care, to incur medical expenses, incur lost wages, to lose time from her daily pursuits, to lose the ability to function normally, and she suffered impairment of her future earnings.

**WHEREFORE** Plaintiff demands compensatory damages to be proven at trial in excess of the jurisdictional amount of $75,000; all costs and expenses of this lawsuit, including attorneys' fees; enhanced compensatory damages as permitted by law; punitive damages in an amount to be determined at trial; and all other and further relief that justice may require.

<u>**COUNT IV –** *Premises Liability*</u>

**Against Defendant KIPP DC**

99.     Plaintiff incorporates and realleges all paragraphs of this Complaint into this Count.

100.     While on KIPP DC' premises, Plaintiff was a business invitee of Defendant KIPP DC.

101.     Defendant KIPP DC owed Plaintiff a duty to use reasonable care under all circumstances in the maintenance and operation of the premises, and to take reasonable precautions to protect her against foreseeable dangers arising out of the arrangements or use of the premises.

102.     Defendant KIPP DC, through its Board of Directors, administrators, faculty, or staff, failed to act with reasonable care to protect Plaintiff and her fellow female students from foreseeable dangers of which KIPP DC had ample actual notice, including, among other things:

    a.   Failing to properly protect Plaintiff, then a minor, from sexual abuse and harassment;

    b.   Improperly protecting Plaintiff, then a minor, from sexual abuse and harassment;

c.   Failing to investigate, correct, and/or otherwise address the openly pervasive environment of sexual harassment and sexual objectification of its female students by its male teachers;

d.   Ignoring and/or otherwise failing to properly address complaints about instances of sexual assaults occurring on the KIPP DC campus and by and between KIPP employees and students;

e.   Failing to promptly report Plaintiff's sexual assaults to the authorities;

f.   Failing to take any action to prevent retaliation against Plaintiff after her assaults were reported to KIPP DC;

g.   Failing to conduct an exit interview with Plaintiff when she left the school;

h.   Failing to heed numerous warnings regarding Defendant Coleman's conduct; and

i.   Failing to supervise, monitor, and/or train staff to handle reports of sexual assault appropriately and adequately.

103.   Defendant KIPP DC, through its Board of Directors, administrators, faculty, or staff, knew or should have known that it had created an opportunity for Plaintiff to be sexually assaulted and harassed.

104.   Defendant KIPP DC's conduct was wanton, malicious, or oppressive in that Defendant KIPP DC disregarded or exhibited reckless indifference to the foreseeable risks of harm and acted with ill will, hatred, hostility, a bad motive, or the intent to abuse its power.

105.   As a direct and proximate cause of Defendant KIPP DC's violation of its fiduciary duty to her, Plaintiff has experienced and will likely continue to experience severe emotional distress accompanied by physical manifestations (such as nausea, vomiting, elevated heart rate,

sweating, nightmares, night terrors, and inability to sleep) and other harms to be established at trial.

106.     As a direct and proximate result of Defendant KIPP DC' negligence, Plaintiff sustained serious injuries, had to undergo treatment and medical care, to incur medical expenses, incur lost wages, to lose time from her daily pursuits, to lose the ability to function normally, and she suffered impairment of her future earnings.

**WHEREFORE** Plaintiff demands compensatory damages to be proven at trial in excess of the jurisdictional amount of $75,000; all costs and expenses of this lawsuit, including attorneys' fees; enhanced compensatory damages as permitted by law; punitive damages in an amount to be determined at trial; and all other and further relief that justice may require.

## COUNT V – *Intentional Infliction of Emotional Distress*

### Against All Defendants

107.     Plaintiff incorporates and realleges all paragraphs of this Complaint into this Count.

108.     Defendants failed to act with reasonable care to protect Plaintiff and her fellow female students from foreseeable dangers of which KIPP DC had ample actual notice, including, among other things:

a.       Failing to properly protect Plaintiff, then a minor, from sexual abuse and harassment;

b.       Improperly protecting Plaintiff, then a minor, from sexual abuse and harassment;

c.       Failing to investigate, correct, and/or otherwise address the openly pervasive environment of sexual harassment and sexual objectification of its female students by its male teachers;

d.      Ignoring and/or otherwise failing to properly address complaints about instances of sexual assaults occurring on the KIPP DC campus and by and between KIPP employees and students;

e.      Failing to promptly report Plaintiff's sexual assaults to the authorities;

f.      Failing to take any action to prevent retaliation against Plaintiff after her assaults were reported to KIPP DC;

g.      Failing to conduct an exit interview with Plaintiff when she left the school;

h.      Failing to heed numerous warnings regarding Defendant Coleman's conduct; and

i.      Failing to supervise, monitor, and/or train staff to handle reports of sexual assault appropriately and adequately.

109.      Defendants knew or should have known that it had created an opportunity for Plaintiff to be sexually assaulted and harassed.

110.      Defendants' conduct was extreme and outrageous, and it intentionally or recklessly caused Plaintiff severe emotional distress.

111.      Defendants' conduct was so outrageous in character, and so extreme in degree, that it exceeds all possible bounds of decency, is atrocious, and is utterly intolerable in a civilized community.

112.      Defendants purposefully intended to cause or recklessly disregarded the high probability of causing a disturbance of Plaintiff's emotional tranquility that was so severe that harmful physical consequences resulted.

113.      As a direct and proximate cause of Defendants' violation of its fiduciary duty to her, Plaintiff has experienced and will likely continue to experience severe emotional distress

accompanied by physical manifestations (such as nausea, vomiting, elevated heart rate, sweating, nightmares, night terrors, and inability to sleep) and other harms to be established at trial.

114.    As a direct and proximate result of Defendants' negligence, Plaintiff Plaintiff sustained serious injuries, had to undergo treatment and medical care, to incur medical expenses, incur lost wages, to lose time from her daily pursuits, to lose the ability to function normally, and she suffered impairment of her future earnings.

**WHEREFORE** Plaintiff demands compensatory damages to be proven at trial in excess of the jurisdictional amount of $75,000; all costs and expenses of this lawsuit, including attorneys' fees; enhanced compensatory damages as permitted by law; punitive damages in an amount to be determined at trial; and all other and further relief that justice may require.

### COUNT VI – *Negligent Infliction of Emotional Distress*

### Against All Defendants

115.    Plaintiff incorporates and realleges all paragraphs of this Complaint into this Count.

116.    Defendants had a duty to Plaintiff to refrain from engaging in the above-described conduct that it knew, or should have known, would foreseeably cause emotional distress to her.

117.    To the extent Defendants' conduct is not found to be reckless and/or intentional, the conduct is—at the very least—negligent.

118.    Defendants' negligent acts include, but are not limited to:

a.    Failing to properly protect Plaintiff, then a minor, from sexual abuse and harassment;

b.    Improperly protecting Plaintiff, then a minor, from sexual abuse and harassment;

      c.      Failing to investigate, correct, and/or otherwise address the openly pervasive environment of sexual harassment and sexual objectification of its female students by its male teachers;

      d.      Ignoring and/or otherwise failing to properly address complaints about instances of sexual assaults occurring on the KIPP DC campus and by and between KIPP employees and students;

      e.      Failing to promptly report Plaintiff's sexual assaults to the authorities;

      f.      Failing to take any action to prevent retaliation against Plaintiff after her assaults were reported to KIPP DC;

      g.      Failing to conduct an exit interview with Plaintiff when she left the school;

      h.      Failing to heed numerous warnings regarding Defendant Coleman's conduct; and

      i.      Failing to supervise, monitor, and/or train staff to handle reports of sexual assault appropriately and adequately.

119.    As a direct and proximate cause of Defendants' malfeasance and nonfeasance, Plaintiff has experienced and will likely continue to experience severe emotional distress accompanied by physical manifestations (such as nausea, vomiting, elevated heart rate, sweating, nightmares, night terrors, and inability to sleep) and other harms to be established at trial.

120.    As a direct and proximate result of Defendants' negligence, Plaintiff sustained serious injuries, had to undergo treatment and medical care, to incur medical expenses, incur lost wages, to lose time from her daily pursuits, to lose the ability to function normally, and she suffered impairment of her future earnings.

**WHEREFORE** Plaintiff demands compensatory damages to be proven at trial in excess of the jurisdictional amount of $75,000; all costs and expenses of this lawsuit, including attorneys'

fees; enhanced compensatory damages as permitted by law; punitive damages in an amount to be determined at trial; and all other and further relief that justice may require.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues in this action so triable.

Respectfully submitted,

<u>Justin A. Browne /s/</u>

BY: Justin A. Browne (to seek admission *pro hac vice*)
Christina Graziano (to seek admission *pro hac vice*)
KETTERER, BROWNE & ANDERSON, LLC
336 S Main St.
Ste. 2A-C
Bel Air, MD 21014
Phone: 410-220-2341

<u>Elizabeth L. Van Pelt /s/</u>
Elizabeth Lauren Van Pelt (DC Bar No. 1615865)
CLINTON & PEED, PLLC
1375 I Street NW, Suite 1150
Washington, DC 20006
Phone: 202-919-9442