## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHANIQUE PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case 1:21-cv-00929 (RC) |
| v. | ) | |
| | ) | |
| KIPP DC SUPPORTING CORP. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANT KIPP DC'S MOTION TO DISMISS

Defendant KIPP DC Public Charter Schools ("KIPP DC") respectfully moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims against KIPP DC for failure to state a claim upon which relief can be granted.  The claim preclusion doctrine bars Plaintiff's claims against KIPP DC, which were previously brought and finally adjudicated on the merits as time-barred in a previous case.  *See Doe v. KIPP DC Supporting Corp.*, Case No. 1:18-cv-00260 (RC) (D.D.C.).[1]  The Sexual Abuse Statute of Limitations Amendment Act ("the Act"), by its plain language, does not apply to claims that have been finally adjudicated.  Even if the Act does apply, that later-enacted legislation does not deprive *Doe* of its preclusive effect.

Separately, if the Act does purport to revive claims that have been finally adjudicated, the Act is unconstitutional under the separation of powers doctrine and Fifth Amendment Due Process Clause.  The Council of the District of Columbia cannot revive claims that have been finally adjudicated on the merits by a federal court.

---

[1] As she did in *Doe*, Plaintiff filed her Complaint against "KIPP DC Supporting Corporation  d/b/a KIPP DC – Shaw QalicB, Inc., d/b/a KIPP DC – Douglas QalicB."  As KIPP DC pointed out in that case (Ex. 2, at 1 n.1), the proper legal name for the KIPP DC Defendant in this lawsuit is KIPP DC Public Charter Schools.

In support of this motion, KIPP DC refers the Court to the accompanying memorandum of points and authorities.  A proposed order is attached.

Respectfully submitted,

*/s/ Gregory G. Marshall*
Gregory G. Marshall, D.C. Bar No. 1011327
Erin K. Sullivan, D.C. Bar No. 984712
Bradley Arant Boult Cummings LLP
1615 L Street NW, Suite 1350
Washington, DC 20036
(202) 719-8207 (Marshall)
(202) 719-8208 (Sullivan)
gmarshall@bradley.com
esullivan@bradley.com

*Counsel for Defendant KIPP DC*

Date: June 7, 2021

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SHANIQUE PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case 1:21-cv-00929 (RC) |
| v. | ) | |
| | ) | |
| KIPP DC SUPPORTING CORP. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT KIPP DC'S MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**

In this case, Plaintiff Shanique Perez alleges that KIPP DC, the non-profit operator of her former middle school, failed to adequately respond to sexual abuse perpetrated by one of Plaintiff's middle school teachers, Defendant Alan Coleman, when Plaintiff was an eighth-grade student during the 2004-2005 school year.  But in *Doe v. KIPP DC Supporting Corp., et al.*, Case No. 1:18-cv-00260-RC (D.D.C.), Plaintiff sued these same defendants based on these same factual allegations.  This Court dismissed the *Doe* case, holding that Plaintiff's claims were time-barred under then-controlling District of Columbia law.  Plaintiff did not appeal that judgment, which is long since final.  Because Plaintiff has brought these claims before—in a case that was finally adjudicated on the merits—this action is barred by the claim preclusion doctrine.  Otherwise, this action would be unconstitutional as-applied under the separation of powers doctrine and the Fifth Amendment.

The earlier *Doe* case is dispositive of this one—"[u]nder the doctrine of claim preclusion," a "final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'"  *Univ. of Colo. Health v. Azar*,

486 F. Supp. 3d 185, 202 (D.D.C. 2020) (Contreras, J.) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

Although the Council of the District of Columbia has since extended the statute of limitations and purported to revive claims arising out of sexual abuse that "would be" time barred under the prior statute, the plain language of that later-enacted legislation does not apply to claims like Plaintiff's that were finally adjudicated. Nor can an intervening change in the law such as that later-enacted legislation deprive *Doe* of its preclusive effect. *See Hegna v. Islamic Revolutionary Guard Corps.*, 908 F. Supp. 2d 116, 130–35 (D.D.C. 2012) (Contreras, J.). And in any event, the separation of powers doctrine and the Due Process Clause prohibit the D.C. Council from reviving claims that were finally adjudicated by a federal court.

KIPP DC acknowledges the egregiousness of Coleman's misconduct, for which he has been convicted and served a prison sentence. But KIPP DC was unaware of any improper conduct at the time, and Plaintiff's claims have been finally adjudicated. The Court should grant KIPP DC's motion and dismiss this case with prejudice.

## BACKGROUND

A. *Doe v. KIPP DC Supporting Corp., et al.*, Case No. 1:18-cv-00260-RC (D.D.C.)

In February 2018, Plaintiff Jane Doe sued KIPP DC, and other defendants, alleging that Coleman subjected her to sexual abuse. *See Doe v. KIPP DC Supporting Corp., et al.*, Case No. 1:18-cv-00260-RC (D.D.C.), Complaint, Doc. 4 (Ex. 1) ("*Doe* Complaint").[1] According to the *Doe* Complaint, Plaintiff was a student at KIPP DC from 2000 to 2005. Ex. 1 (*Doe* Compl.), ¶ 20. The complaint alleged that, during the 2004-05 school year, Coleman began an inappropriate

---

[1] The Court "may take judicial notice of facts contained in public records of other proceedings." *Doe v. KIPP DC Supporting Corp.*, 373 F. Supp. 3d 1, 6 n.2 (D.D.C. 2019) (quoting *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014)).

sexual relationship with Plaintiff, who was 14 years old and in eighth grade at the time.  *Id.* ¶¶ 26–27.[2]  The complaint further alleged that during that school year, KIPP DC suspected Coleman's misconduct but failed to take appropriate action to investigate (*id.* ¶ 33) and failed to train staff about sexual abuse (*id.* ¶¶ 44–55).  After the 2004-05 school year, Plaintiff graduated from KIPP DC and enrolled in a new school for ninth grade.  *Id.* ¶ 28.  According to the *Doe* Complaint, at some point after the 2004-05 school year, KIPP DC terminated Coleman's employment.  *Id.* ¶¶ 1, 29.  Although the *Doe* Complaint included additional allegations about other defendants during later periods, the allegations related to KIPP DC pertained exclusively to action or inaction during the 2004-05 school year.  And the *Doe* complaint included causes of action for alleged violations of Title IX, failure to train under § 1983, negligence per se, assault, battery, and intentional infliction of emotional distress.  *Id.* at 12–29.

KIPP DC moved to dismiss Plaintiff Doe's claims under Rule 12(b)(6), arguing that the governing statutes of limitations barred those claims.  *See Doe v. KIPP DC Supporting Corp., et al.*, Case No. 1:18-cv-00260-RC (D.D.C.), KIPP DC's Motion to Dismiss and Reply in Support, Docs. 6, 16 (Ex. 2).  On January 3, 2019, this Court entered a memorandum opinion, holding that all of "Doe's claims [were] time-barred under D.C. law."  *See Doe v. KIPP DC Supporting Corp., et al.*, Case No. 1:18-cv-00260-RC (D.D.C.), Doc. 22, Memorandum Opinion Granting Defendants' Motions to Dismiss; Denying Without Prejudice Plaintiff's Motion to Amend (Ex. 3).

In so holding, the Court observed that the District of Columbia had enacted a statute of limitations for "claims 'arising out of sexual abuse that occurred while the victim was a minor.'"  Ex. 3, at 10 (quoting D.C. Code § 12-301(11)).  Under that statute, the "limitations period is the

---

[2] Authorities in both the District of Columbia and Maryland successfully prosecuted Coleman, and he served a sentence of imprisonment as a result.

later of seven years from the victim's eighteenth birthday or three years from 'when the victim knew, or reasonably should have known, of any act constituting abuse.'" *Id.* (quoting D.C. Code § 12-301(11)).  Applying that statute to Plaintiff's claims, this Court held that "the limitations period was only extended to seven years past Doe's eighteenth birthday, or 2015." *Id.* at 12–13, 17 n.9.  As a result, this Court held that Plaintiff's claims were untimely. *Id.* at 12–17.

That same day, this Court entered an order dismissing Plaintiff's case without prejudice. *See Doe v. KIPP DC Supporting Corp., et al.*, Case No. 1:18-cv-00260-RC (D.D.C.), Order Granting Defendants' Motions to Dismiss; Denying Without Prejudice Plaintiff's Motion to Amend, Doc. 21 (Ex. 4).  Doe did not appeal that final judgment.

**B.    The Sexual Abuse Statute of Limitations Amendment Act**

Four months later, on May 3, 2019, the District of Columbia enacted the Sexual Abuse Statute of Limitations Amendment Act of 2018 ("the Act").  Two of the Act's provisions are relevant here.

Section 3 of the Act "amend[ed] section 12-301 of the District of Columbia Official Code to extend the civil statute of limitations for the recovery of damages arising out of sexual abuse." 2018 District of Columbia Laws 22-311 (Act 22-593).  Accordingly, Section 12-301(11) now provides that a claim "for the recovery of damages arising out of sexual abuse that occurred while the victim was less than 35 years of age" may not be brought after "the date the victim attains the age of 40 years, or 5 years from when the victim knew, or reasonably should have known, of any act constituting sexual abuse, whichever is later." *See* D.C. Code § 12-301(11).

Section 5 of the Act also "create[s] a 2-year revival period for claims that would be time-barred under section 12-301 of the District of Columbia Official code before the effective date of this act, but that would not be time-barred under amendments to that section made by this act."

2018 District of Columbia Laws 22-311.  It purports to "revive[]" claims "that would be time-barred" under the previous version of § 12-301(11):

> Sec. 5. Applicability.
>
> (a)(1) Section 3 shall apply to an action that accrues before, on, or after the effective date of this act, unless the statute of limitations for the action expired before the effective date of this act.
>
> (2) Notwithstanding any other provision of law, a claim for the recovery of damages that would be time-barred under D.C. Official Code § 12–301 before the effective date of this act, but that would not be time-barred under section 3, is revived and, in that case, a cause of action may be commenced within 2 years after the effective date of this act.

*Id.*

## C.    This Lawsuit

In April 2021, Plaintiff Shanique Perez brought this lawsuit.  Doc. 1.  Plaintiff's Complaint alleges that Coleman subjected her to sexual abuse when she was a middle and high school student between 2004 and 2009.  *Id.* ¶ 13.  Plaintiff alleges that KIPP DC knew of Coleman's conduct but failed to act adequately to stop it.  *See, e.g.*, *id.* ¶¶ 73–75.[3]

Those allegations repeat the allegations in *Doe*.  As in *Doe*, the Complaint here alleges that Plaintiff was a student at KIPP DC from on or about 2000 to 2005.  *Id.* ¶ 13, 23 (compare *Doe* Compl. ¶ 20).  The Complaint also alleges that, during the 2004-05 school year, Coleman began an inappropriate sexual relationship with Plaintiff, who was 14 years old at the time.  Doc. 1, ¶ 15 (compare *Doe* Compl. ¶¶ 26–27).  The Complaint further alleges that during that school year, KIPP DC suspected Coleman's misconduct but failed to take appropriate action to investigate and train staff about sexual abuse.  Doc. 1, ¶¶ 16–19, 41–56 (compare *Doe* Compl. ¶¶ 33, 44–55).  After the

---

[3] As she did in *Doe*, Plaintiff filed her Complaint against "KIPP DC Supporting Corporation d/b/a KIPP DC – Shaw QalicB, Inc., d/b/a KIPP DC – Douglas QalicB."  As KIPP DC pointed out in that case (Ex. 2, at 1 n.1), the correct name for the KIPP DC Defendant in this lawsuit is KIPP DC Public Charter Schools.

2004-05 school year, Plaintiff graduated from KIPP DC and enrolled in a new school for ninth grade.  Doc. 1, ¶ 36 (compare *Doe* Compl. ¶ 28).  According to the Complaint, at some point after the 2004-05 school year, KIPP DC terminated Coleman's employment.  Doc. 1, ¶¶ 13, 18, 50, 55 (compare *Doe* Compl. ¶¶ 1, 29).

As she did in *Doe*, Plaintiff alleges violations of Title IX, intentional infliction of emotional distress, and various theories of negligence.  Plaintiff also has added claims for negligent infliction of emotional distress and premises liability.  Doc. 1, at 13–26.

## LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint."  *Libre By Nexus v. BuzzFeed, Inc.*, 311 F. Supp. 3d 149, 153 (D.D.C. 2018) (citing *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018)).  A defendant may raise claim preclusion "in a 12(b)(6) motion to dismiss for failure to state a claim when the defense appears on the face of the complaint and any materials of which the court may take judicial notice."  *Middleton v. U.S. Dep't of Labor*, 318 F. Supp. 3d 81, 86 (D.D.C. 2018) (citation omitted).  Put differently, claim preclusion "may serve as the basis for a 12(b)(6) dismissal when 'all relevant facts are shown by the court's own records, of which the court takes notice.'"  *Id.* (citation omitted).

Rule 12(b)(6) also "authorizes a court to dismiss a claim on the basis of a dispositive issue of law," including constitutional issues.  *Neitzke v. Williams*, 490 U.S. 319, 326–28 (1989); *see also Gowens v. DynCorp*, 132 F. Supp. 2d 38, 41 (D.D.C. 2001) ("'Because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage.'") (quoting *Marshall Co. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).

**ARGUMENT**

I.    **The claim preclusion doctrine bars Plaintiff's claims because those claims were finally adjudicated on the merits in Plaintiff's previous case against KIPP DC.**

Claim preclusion, or res judicata, "is an ancient legal doctrine that, in simple terms, limits parties to one bite at the litigation apple." *Ashbourne v. Hansberry*, 894 F.3d 298, 302 (D.C. Cir. 2018).[4] The doctrine "bars successive lawsuits if a prior litigation (1) involving the same claims or causes of action, (2) between the same parties or their privies, (3) ended in a final, valid judgment on the merits, (4) entered by a court of competent jurisdiction." *Ashbourne*, 894 F.3d at 302.

A.    **Each element of the claim preclusion doctrine is met here.**

The claim preclusion doctrine bars Plaintiff's claims against KIPP DC because she raised these same claims in a previous case against KIPP DC, and this Court held them untimely under the then-applicable statute of limitations.

1.    **This case involves the same claims or causes of action as *Doe*.**

This case involves the same claims as Plaintiff's first case because both cases arise from precisely the same allegations.

Under federal law, "[s]uits involve the same claim (or 'cause of action') when they arise from the same transaction or involve a common nucleus of operative fact." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595 (2020) (citations omitted).

---

[4] In *Doe*, Plaintiff invoked federal question jurisdiction and supplemental jurisdiction. Ex. 1, at ¶¶ 10, 12. As a result, federal law determines the preclusive effect of the *Doe* judgment. *See, e.g.*, *Henderson v. Engstrom*, 2014 WL 4678262, at *2 (D.S.D. Sept. 18, 2014); *In re JPMorgan Chase Derivative Litig.*, 263 F. Supp. 3d 920, 930–31 (E.D. Cal. 2017); *In re Residential Capital, LLC*, 2016 WL 4487635, at *6 (Bankr. S.D.N.Y. Aug. 25, 2016); *Robinson v. City of Phoenix*, 2010 WL 4054167, at *2 (D. Ariz. Oct. 15, 2010).

These cases do not just arise from a "common nucleus" of fact; they arise from *the exact same facts*.  Both complaints allege, for example, the following:

- Plaintiff "was a student at Defendant KIPP DC in Washington, D.C. from on or about 2001 to 2005."  *Compare* Doc. 1, ¶ 13, *with* Ex. 1 (*Doe* Compl.), ¶ 1.

- "Beginning in 2004, when she was 14 years old, and continuing until 2009," Plaintiff "suffered an abusive and coercive relationship, which included sexual abuse, perpetrated by Defendant Alan Wade Coleman, a teacher at KIPP DC." *Compare* Doc. 1, ¶ 13, *with* Ex. 1 (*Doe* Compl.), ¶ 1 (substituting "coercive" for "manipulative").

- "In or about 2007, when she was 16 years old, until the termination of the abusive relationship in June 2009, Plaintiff lived with Defendant Coleman at his home in Montgomery County, Maryland."  *Compare* Doc. 1, ¶ 13, *with* Ex. 1 (*Doe* Compl.), ¶ 1.

And both complaints allege that during the 2004-2005 school year, KIPP DC suspected Coleman's misconduct but failed to take appropriate action to investigate and failed to train staff about sexual abuse.  *See supra* at 3–5.  Put simply, both actions allege "the same facts"—i.e., that Plaintiff's middle school teacher, Coleman, perpetrated sexual abuse against her while she was an eighth-grade student at KIPP DC and that KIPP DC did not respond appropriately.  Because both cases arise from the same facts, the same cause of action element is met.  *See, e.g.*, *Gresham v. Dist. of Columbia*, 66 F. Supp. 3d 178, 187–88 (D.D.C. 2014) (Contreras, J.) (holding that same-cause-of-action element was met when plaintiff "alleged the[] same facts in [his] prior actions").

Plaintiff cannot avoid the preclusive effect of the prior judgment by invoking new or different legal theories as a purported basis for relief.  Instead, "'it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory on which a litigant relies.'"  *Richardson v. Sauls*, 319 F. Supp. 3d 52, 61 (D.D.C. 2018) (quoting *Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittman*, 574 F. Supp. 2d 143, 149 (D.D.C. 2008)).  Consistent with that rule, this Court has held that "a change in theory does not change the [claim preclusion] outcome."  *Gresham*, 66 F. Supp. 3d at 189.  And that follows from the nature of claim

preclusion—it "precludes the litigation of *claims*, not just *arguments*," so "the plaintiff cannot re-litigate an issue simply by asserting a different legal claim." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182, 192–93 (D.D.C. 2011), *aff'd*, 682 F.3d 1043 (D.C. Cir. 2012) (citations omitted).[5]

### 2.     This case involves the same parties as *Doe*.

"The second element of *res judicata* requires that the prior litigation be between the same parties or their privies." *RSM Prod. Corp.*, 800 F. Supp. 2d at 193 (citing *Nat. Res. Def. Council v. E.P.A.*, 513 F.3d 257, 260 (D.C. Cir. 2008)).

Plaintiff brought both cases against KIPP DC.  *Compare* Doc. 1, ¶ 2, *with* Ex. 1, ¶ 15.  Both cases also involve the same plaintiff.  According to both complaints, Plaintiff was a student at KIPP DC from on or about 2000 to 2005.  Doc. 1, ¶¶ 13, 23; Ex. 1 (*Doe* Compl.), ¶ 20.  Both complaints allege that, during the 2004-05 school year, Coleman began an inappropriate sexual relationship with Plaintiff, who was 14 years old at the time.  Doc. 1, ¶ 15; Ex. 1 (*Doe* Compl.) ¶¶ 26-27.  Both complaints allege that, after the 2004-05 school year, Plaintiff graduated from KIPP DC and enrolled in a new school for ninth grade.  Doc. 1, ¶ 36; Ex. 1 (*Doe* Compl.) ¶ 28. And both complaints allege that, in or about June 2007, Plaintiff, then "a minor, [left] her mother's house to live with [Coleman] at his home in Montgomery County, Maryland."  Doc. 1, ¶ 15; Ex. 1 (*Doe* Compl.) ¶ 3.

For this reason, it does not matter that Plaintiff brought the *Doe* case under a pseudonym—the complaints' allegations show that "Jane Doe" *is* "Shanique Perez."  And when the complaints' allegations show that the cases involve the same parties, a plaintiff "cannot get a do-over"—and cannot avoid claim preclusion on a motion to dismiss—"by the simple expedient of calling the

---

[5] Many of Plaintiff's legal claims are not even new—in both cases, Plaintiff alleged violations of Title IX, various negligence theories, and intentional infliction of emotional distress.

players by different names." *Veit v. Frater*, No. 16-CV-621, 2017 WL 5891325, at *4 (E.D. Wis. Jan. 30, 2017) (granting motion to dismiss), *aff'd in relevant part and rev'd in part*, 715 F. App'x 524 (7th Cir. 2017); *see also Veit*, 715 F. App'x at 528 (criticizing a "transparent[] attempt to evade claim preclusion by engaging in the 'subterfuge' of 'calling the same players by different names'").

Because both cases involve the same parties, the second claim preclusion element is met. *See Ashbourne*, 894 F.3d at 302.

### 3.      *Doe* ended in a final, valid judgment on the merits.

The *Doe* case "ended in a final, valid judgment on the merits," which satisfies the third element of the claim preclusion test.  *Id.*

In that case, this Court dismissed all of Plaintiff's claims as untimely under the governing statutes of limitations.  *See* Ex. 3, at 6–18 (D.D.C. Jan. 3, 2019).  In its order, the Court stated, "this case is dismissed without prejudice."  Ex. 4 (capitalizations and bolding omitted).  The Court's dismissal of the case was final.  *See, e.g.*, *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020) ("[W]hen the district court dismisses the 'case,' even when it does so without prejudice to refiling, the litigation is over and the dismissal is final.").  And Plaintiff did not appeal.

It is well settled that, "for purposes of res judicata, 'the rules of finality . . . treat a dismissal on statute-of-limitations grounds . . . as a judgment on the merits.'"  *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995)); *accord, e.g.*, *Richardson*, 319 F. Supp. 3d at 65–66 (holding that prior case "was a final, valid judgment on the merits for *res judicata* purposes" where it had been dismissed as untimely based on the statute of limitations); *Lamont v. Proskauer Rose, LLP*, 881 F. Supp. 2d 105, 112 (D.D.C. 2012) (holding that earlier case's "dismissal on statute of limitations grounds" was a "judgment on the merits").

Because a dismissal on statute of limitations grounds is "a judgment on the merits," *Smalls*, 471 F.3d at 192, the third element of claim preclusion is met.

> **4.    This Court, which entered the *Doe* judgment, is a court of competent jurisdiction.**

Finally, Plaintiff's first case was dismissed by a court of competent jurisdiction.  Ex. 4. This Court presided over the *Doe* case, and "[a] United States District Court is a court of competent jurisdiction for the purposes of claim preclusion." *Simon v. U.S. Dep't of Justice*, No. 20-580 (RC), 2020 WL 4569425, at *4 (D.D.C. Aug. 7, 2020) (Contreras, J.); *see also, e.g.*, *Lamont*, 881 F. Supp. 2d at 112 (stating that the D.C. Circuit has "observ[ed] that an Article III court is a court of competent jurisdiction") (citing *Smalls*, 471 F.3d at 192).

As a result, the fourth element of claim preclusion is met, and this case is barred by res judicata. *See Ashbourne*, 894 F.3d at 302.

> **B.    The Sexual Abuse Statute of Limitations Amendment Act of 2018 does not deprive *Doe* of its preclusive effect.**

Plaintiff cannot avoid *Doe*'s preclusive effect by relying on the D.C. Sexual Abuse Statute of Limitations Amendment Act.

> **1.    The Sexual Abuse Statute of Limitations Amendment Act did not revive claims that already had been adjudicated as time barred.**

As a threshold matter, the Sexual Abuse Statute of Limitations Amendment Act does not apply to claims, like Plaintiff's here, that were finally adjudicated before the Act's passage.  The Act provides that the amended statute of limitations "shall apply to an action that accrues before, on, or after the effective date of this act, unless the statute of limitations for the action expired before the effective date of this act."  2018 District of Columbia Laws 22-311 (Act 22-593).  And the Act "revive[s]" only "claim[s] for the recovery of damages that *would be* time-barred." *Id.* (emphasis added).  But Plaintiff's claim is not one "that *would be* time-barred"—it *was* time-

barred, as this Court held in *Doe*.  Ex. 3, at 12–17.  By its plain language then, the Act does not apply to claims that were already adjudicated.  *See Lucas v. United States*, 240 A.3d 328, 335 (D.C. 2020) ("Questions of statutory interpretation begin with the plain language of the statute, and we construe words according to their ordinary meaning.").  This interpretation does not render the Act meaningless.  Instead, claims that "would be" time-barred under the previous statute but that were never finally adjudicated would be subject to the amended statute of limitations.

And even if the Act's plain language were ambiguous (it is not), the constitutional avoidance canon requires that the Act be interpreted not to apply to claims that already were adjudicated untimely.  *See, e.g.*, *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1235–36 (D.C. 2018) (in light of "serious constitutional concerns," a court "appl[ies] the canon of constitutional avoidance, 'an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts'") (citation omitted).  As explained below, if the Act amends the statute of limitations and revives finally adjudicated claims, the Act is unconstitutional as applied because it violates the separation of powers doctrine and the Due Process Clause.  *See infra* at 14–21.

> ### 2. Even if the Act amended the statute of limitations for claims that already had been held untimely, later-enacted legislation does not deprive a judgment of its preclusive effect.

Even if the Act did amend the statute of limitations for claims that already had been held time-barred, that still does not alter *Doe*'s preclusive effect.

This Court has recognized that res judicata almost always applies, even in the face of an intervening change in the law: in only "a small set of cases, a change in controlling legal principles may allow a party to relitigate a claim that would otherwise be barred by *res judicata*."  *Hegna*, 908 F. Supp. 2d at 130–35.  That exception is narrow—as a general rule, "the res judicata consequences of a final, unappealed judgment on the merits" are not altered "by the fact that the

judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398–99 (1981); *see also City of Arlington v. F.C.C.*, 569 U.S. 290, 297 (2013) ("A court's power to decide a case is independent of whether its decision is correct, which is why even an erroneous judgment is entitled to res judicata effect."). Consistent with that rule, this Court has emphasized that there is no "generally-applicable exception to res judicata for post judgment changes in statutory law." *Hegna*, 908 F. Supp. 2d at 134.

Instead, such exceptions to claim preclusion arise on just two "*rare occasions*": (1) "when a new statute provides an independent basis for relief which did not exist at the time of the prior action," such as when "*threatened or continuing acts*" that "were the subject of the prior action involve substantial public policy concerns" and (2) "when a new statute conveys jurisdiction upon a court to entertain claims that were previously beyond its jurisdiction." *Id.* at 134–35 (emphases in original) (quoting 18 Moore's Federal Practice § 131.22[3]). "Outside of th[o]se limited circumstances," the "general rule that a change in law will not abrogate the preclusive effect of a prior judgment still controls." *Id.* at 135. In short, "while a statute may define the preclusive effect to be given to pending or future cases, it may not do [so] for cases that have achieved repose through a final judgment," and "*any party asserting such a statutory construction as the basis for a subsequent action will fail*." *Id.* (emphasis added).

That rule makes sense. If later changes in the law could deprive judgments of their preclusive effect, it would eviscerate the finality interests that claim preclusion is intended to further. As this Court put it, that rule would "creat[e] elements of uncertainty and confusion and . . . undermin[e] the conclusive character of judgments, consequences which it was the very purpose of the doctrine of res judicata to avert." *Id.* at 129. Allowing the legislature "to alter the

elements of a cause of action and then authorize a second trial under the 'new liberal . . . rule of pleading,'" notwithstanding a "'final judgment[] rendered on the basis of [the former] stringent . . . rule of pleading,'" would "'provide[] massive scope for undoing final judgments.'"  *Id.* at 134 (quoting *Plaut*, 514 U.S. at 229).  Thus, the statutory amendment cannot change the result, and this case is barred on claim preclusion grounds.

## II.    Separately, the Court should dismiss Plaintiff's claims because it would be unconstitutional to revive claims that were finally adjudicated in a previous case.

Separately, even if the Act purports to revive Plaintiff's claims against KIPP DC so that claim preclusion does not apply (on the plain language of the statute, it does not so purport, *see supra* at 11–12), dismissal nevertheless is appropriate because the Act would be unconstitutional as applied.  Because this Court in *Doe* entered a final judgment in KIPP DC's favor on Plaintiff's claims, the Act as-applied violates the separation of powers and the Fifth Amendment's Due Process Clause to the extent it purports to revive those claims.

### A.    As applied here, the Act's revival provision violates the separation of powers doctrine because there was a final judgment on the merits in *Doe*.

The separation of powers doctrine prohibits a legislature from intruding on the judiciary's authority.  To the extent the Act purports to revive—and impose a new statute of limitations for—claims that were finally adjudicated, it is unconstitutional as applied here.

#### 1.    The District of Columbia recognizes the separation of powers doctrine.

Congress created the District's government in "'the familiar tripartite structure,'" *Wilson v. Kelly*, 615 A.2d 229, 231 (D.C. 1992), and "the District's legislature, the Council, 'recognizes the principle of separation of powers in the structure of the District of Columbia government,'" *Unum Life Ins. Co. of Am. v. Dist. of Columbia*, 238 A.3d 222, 232 (D.C. 2020) (quoting D.C. Code § 1-301.44(b)).  In fact, "[b]y specific language, 'the legislative power granted to the District by this Act is vested in and shall be exercised by the Council in accordance with this Act,' D.C.

Code § 1–227 (1992); '[t]he executive power of the District shall be vested in the Mayor,' D.C. Code § 1–242 (1992); and '[t]he judicial power of the District is vested in the District of Columbia Court of Appeals and the Superior Court of the District of Columbia.' D.C. Code tit. 11 app. § 431(a) (1989))." *Wilson*, 615 A.2d at 231.

Because the District's charter adopts the "familiar tripartite structure" and "vest[s] . . . the respective 'power' in each branch," *id.*, the same separation of powers principles that apply to the federal government likewise apply to the District's government, *id.* ("[I]t is reasonable to infer from this tripartite structure and the vesting of the respective 'power' in each branch that the same general principles should govern the exercise of such power in the District Charter as are applicable to the three branches of government at the federal level.").

> **2.    The separation of powers doctrine prohibits legislative interference with a final judgment, so the Council cannot revive Plaintiff's claims.**

A legislature exceeds its constitutional authority when it purports to undo a final judgment rendered by the judicial branch. *See Plaut*, 514 U.S. at 227–28. But that is what the D.C. Council would have done here. Extending the statute of limitations and purporting to revive Plaintiff's claims against KIPP DC is constitutionally impermissible because it amounts to "legislative interference" with this Court's final judgment in *Doe*. *See id.*

The vesting of the "judicial power" in the judicial branch grants courts "the power, not merely to rule on cases, but to *decide* them, subject to review only by superior courts in the [judicial] hierarchy—with an understanding, in short, that 'a judgment *conclusively resolves the case*' because 'a judicial Power' is one to render dispositive judgments." *Id.* at 218–19 (quoting Frank Easterbrook, *Presidential Review*, CASE W. L. REV. 905, 926 (1990) (emphasis added)).

From that explicit vesting of "judicial" power in the courts, it follows that a legislature exceeds its constitutional authority when it tries to "depriv[e] judicial judgments of the conclusive

effect that they had when they were announced." *Id.* at 228.  In other words, because the judicial power is vested in the judiciary, "a judgment at law is generally immune to subsequent legislative changes," and "an attempt by [the legislature] to alter the legal judgment of a court implicates separation of powers principles."  *QUALCOMM, Inc. v. F.C.C.*, 181 F.3d 1370, 1380 n.7 (D.C. Cir. 1999).

The U.S. Supreme Court's decision in *Plaut* confirmed that "now settled" rule.  *See id.* at 1379.  *Plaut*, like this case, involved a legislative change to a civil statute of limitations.  The plaintiffs there had filed a securities fraud case—but, while the case was pending, the Supreme Court interpreted the statute of limitations in such a way that barred claims like the plaintiffs' there as untimely.  514 U.S. at 213–14.  Applying that decision, the district court then dismissed the plaintiffs' claims as untimely, and the plaintiffs did not appeal.  *Id.* at 214.  But Congress did not agree with the Supreme Court's interpretation of the statute.  It responded by enacting § 27A of the securities fraud statute, which extended the statute of limitations and allowed plaintiffs whose cases had been dismissed as untimely to "reinstate" or revive them.  *See id.* at 214–15.  Invoking that new legislation, the plaintiffs in *Plaut* then sought to revive their previously time-barred claims.  *Id.* at 215.

But the Supreme Court conclusively held that Congress had overstepped.  As applied to the *Plaut* plaintiffs and defendant, Congress's revival provision was "a clear violation" of the separation of powers doctrine because it had the effect of undermining a final judicial judgment. *See id.*

"When retroactive legislation requires its own application in a case already finally adjudicated, it does no more and no less than 'reverse a determination once made, in a particular case.'"  *Id.* (quoting The Federalist No. 81, at 545).  On that point, the Court did not mince words:

"[A] judicial decision" that "achiev[es] finality . . . becomes the last word of the judicial department with regard to a particular case or controversy, and [the legislature] may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was." *Id.* at 227 (emphasis in original). Critically, the Supreme Court affirmed that this rule of prohibition applies even if the legislature acts for "the *very best* of reasons." *Id.* (emphasis in original).

Those constitutional harms are only amplified when, like here, a "state" legislature purports to reopen the judgment of a *federal* court. As the Supreme Court recognized in a different context, "[i]f the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution itself becomes a solemn mockery." *Cooper v. Aaron*, 358 U.S. 1, 18 (1958) (quoting *United States v. Peters*, 9 U.S. 115, 136 (1809)); *see also Rodriguez v. Cook Cty.*, 664 F.3d 627, 629 (7th Cir. 2011) ("State legislatures have no power at all to direct federal courts to disregard their own judgments.").

The Act, as applied here, effects the same unconstitutional intrusion that the Supreme Court condemned in *Plaut*. Just as Congress could not revive Plaut's claim, neither can the Act revive Plaintiff's here. "By passing retroactive legislation affecting a case already finally adjudicated," the Council would have "circumvented the fundamental principle that the judicial power includes the authority to render dispositive judgments" and "thus violated the principle of separation of powers." *QUALCOMM, Inc.*, 181 F.3d at 1379; *see also O'Hara v. LaHood*, 756 F. Supp. 2d 75, 79–80 (D.D.C. 2010) ("The constitutional violation identified [in] *Plaut* . . . was not simply the nullification of final judgments by the legislature, but 'legislative interference' with those judgments.").

In a situation that was strikingly similar to this case, the California Court of Appeals likewise held that its state legislature violated the separation of powers doctrine by enacting a new statute of limitations that purported to revive sexual abuse tort claims that had been dismissed under an earlier statute of limitations. *Perez v. Roe I*, 146 Cal. App. 4th 171 (2006). Applying *Plaut* and California separation-of-powers cases, the appellate court "easily" found that the "Legislature's attempt to undo the finality of those earlier judgments violate[d] the separation of powers doctrine." *Id.* at 183.

The court recognized that its holding meant that the later-enacted legislation "allow[ed] the revival of claims for plaintiffs who never bothered to file a complaint before the revival period took effect, while punishing those plaintiffs who displayed more diligence by at least trying to sue earlier, albeit after the then-existing limitations period had expired." *Id.* at 188. But this result, the court emphasized, balanced "the competing rights of individual parties." *Id.* After all, "the defendants [had] years ago obtained favorable judgments based on the law as it then existed, likely incurring substantial attorney's fees in order to do so." *Id.* And "[r]elying on what appeared to be a final judgment, they might have felt free years later to discard favorable evidence and might as well have lost track of key witnesses." *Id.*

Because the separation of powers doctrine prohibits this sort of as-applied "legislative interference" with a final judgment, this Court should dismiss this case with prejudice.

### B.    As applied here, the Act violates the Fifth Amendment by purporting to deprive KIPP DC of a final judgment in its favor without due process of law.

The Due Process Clause protects citizens from arbitrary legislative action destroying rights established by a final judicial judgment. If applied here to revive Plaintiff's claims, the Act would do just that—deprive KIPP DC of a final judgment in its favor without due process of law.

The Fifth Amendment's Due Process Clause applies to the District of Columbia. *See, e.g.*, *Butera v. Dist. of Columbia*, 235 F.3d 637, 645 n.7 (D.C. Cir. 2001). The clause "ensures no individual is 'deprived of life, liberty, or property, without due process of law.'" *Aref v. Lynch*, 833 F.3d 242, 252 (D.C. Cir. 2016) (quoting U.S. Const. amend. V). A final judgment is a property right subject to due process protections.[6] And as a result, the Supreme Court long has recognized that "due process of law" excludes from the legislative power "acts reversing judgments, . . . legislative judgments and decrees, and other similar special, partial and arbitrary exertions of power under the forms of legislation." *Hurtado v. California*, 110 U.S. 516, 536 (1884).

After the Fourteenth Amendment made federal due process requirements applicable to the States, the Supreme Court held that the reversal of a state court judgment on the basis of later-enacted legislation offended due process. *McCullough v. Virginia*, 172 U.S. 102, 123–24 (1898). Such action, the Court emphasized, was "not within the [legislature's] power":

> It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.

*Id.*; *see also Chase Secs. Corp. v. Donaldson*, 325 U.S. 304, 310 (1945) (suggesting that due process might prohibit "legislative action [that] deprive[s a defendant] of a final judgment in its favor").[7]

---

[6] *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1345 (7th Cir. 1992) ("A judgment that has become final through exhaustion of all appellate remedies is a property right, which Congress could not take away without paying just compensation" or "perhaps (at least in this case) could not take away at all.").

[7] *Cf. Dist. of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 175–78 (D.C. 2008) (distinguishing between "causes of action that have reached final, unreviewable judgment—and in *that* sense have vested—and all others, pending and future, which may be modified by rationally grounded retroactive legislation").

That result flows from the "axiomatic" rule that "[a] fair trial in a fair tribunal is a basic requirement of due process." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009). And accordingly, due process requires a neutral and detached decisionmaker. *See, e.g.*, *Concrete Pipe & Prod. of Calif., Inc. v. Constr. Laborers Pension Tr. for S. Calif.*, 508 U.S. 602, 617 (1993); *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). Allowing a legislature to overturn a court's final judgment unsettles this principle by subjecting the impartial and politically neutral decisionmaking of a court to a majoritarian veto by an elected, political body. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994) ("The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals.").

Applying these principles, federal courts have found it constitutionally impermissible for state legislatures to amend statutory time bars and revive cases that were dismissed as untimely and had become final. *See Luxford v. Dalkon Shields Claimant Tr.*, 978 F. Supp. 221, 226–29 (D. Md. 1997); *McFadden v. Dryvit Sys., Inc.*, No. 04-CV-103-BR, 2006 WL 696253, at *3–5 (D. Ore. Mar. 13, 2006).

That is so because allowing a legislature to "resurrect" a plaintiff's finally adjudicated claims "would not merely upset a litigant's expectations, but [also] deprive the defendant of a protected property right without due process of law." *Luxford*, 978 F. Supp. at 229. Accordingly, those courts held that state legislation is "unconstitutional" when it "purport[s] to reinstate [the plaintiffs'] claims despite the entry of the [earlier] final judgment against them." *Id.*; *accord McFadden*, 2006 WL 696253, at *5 (in "purport[ing] to resurrect claims that have been adjudicated

to final judgment," "the legislation deprives [the defendant] of a protected property right without due process of law").[8]

So too here.  This Court in *Doe* adjudicated Plaintiff's claims against KIPP DC, and, after Plaintiff did not seek review, that judgment became final.  The D.C. Council cannot disturb that vested property right without due process, and, as applied to KIPP DC in this case, that is what the Act purports to do.

## CONCLUSION

For the foregoing reasons, the Court should grant KIPP DC's motion and dismiss this case with prejudice.

Respectfully submitted,

*/s/ Gregory G. Marshall*
Gregory G. Marshall, D.C. Bar No. 1011327
Erin K. Sullivan, D.C. Bar No. 984712
Bradley Arant Boult Cummings LLP
1615 L Street NW, Suite 1350
Washington, DC 20036
(202) 719-8207 (Marshall)
(202) 719-8208 (Sullivan)
gmarshall@bradley.com
esullivan@bradley.com

*Counsel for Defendant KIPP DC*

---

[8] *Luxford* and *McFadden* applied the Fourteenth Amendment's Due Process Clause, but "due process protections under the Fifth and Fourteenth Amendments are the same." *Doe v. Dist. of Columbia*, 206 F. Supp. 3d 583, 603 n.11 (D.D.C. 2016) (quoting *English v. Dist. of Columbia*, 717 F.3d 968, 972 (D.C. Cir. 2013)); *accord, e.g.*, *Hernandez-Gotay v. United States*, 985 F.3d 71, 81 n.9 (1st Cir. 2021) (recognizing that "the language and policies of the Due Process Clauses of the Fifth and Fourteenth Amendments are essentially the same"); *Walker v. R.J. Reynolds Tobacco Co.*, 734 F.3d 1278, 1287 (11th Cir. 2013) ("[T]he reaches of the [Due Process Clauses of the] Fourteenth and Fifth Amendments are coextensive.") (citation omitted; alteration in original).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2021, I electronically filed the foregoing motion with the

Clerk of the Court using the CM/ECF system, and sent the motion via first-class United States

mail to the following parties:

> Capital City Public Charter School, Inc.
> Attn: Karen Dresden, Head of School
> 100 Peabody Street NW
> Washington, DC 20011
>
> Alan Wade Coleman
> 7014 NW 39th Avenue
> Gainesville, FL 32606

> */s/ Erin K. Sullivan*
> Erin K. Sullivan
>
> *Counsel for Defendant KIPP DC*