UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHANIQUE PEREZ                )
                              )
            Plaintiff,        )
                              )
v.                            )        Civil Action No. 1:21-CV-00929-RC
                              )
KIPP DC SUPPORTING            )
CORPORATION, et al.           )
                              )
            Defendants        )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

COMES NOW defendant Capital City Public Charter School, Inc. (Capital City), by counsel, and for its Memorandum of Points and Authorities in Support of its Motion to Dismiss states as follows:

### I.  INTRODUCTION

Capital City is a charter school located in Washington, D.C. This action arises out of sexually abusive relationship that occurred between 2004 and 2009 between the Plaintiff and one of her teachers at KIPP DC, Defendant Alan Coleman. The Plaintiff has sued Capital City for negligent supervision and hiring/retention, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress, merely based on the fact that Capital City hired Defendant Coleman in 2005. Plaintiff was never a student at Capital City and none of the alleged abuse ever occurred at Capital City. This cause of action should be dismissed with prejudice because the allegations pertaining to this defendant, Capital City, fail to state a cause of action and is otherwise barred by the statute of limitations.

## II.  **FACTS AS ALLEGED IN THE COMPLAINT**

Plaintiff was a student at KIPP DC from either 2000 or 2001 to 2005. Compl. ¶¶ 13, 23. Plaintiff alleges that beginning in 2004, when she was just 14 years old, Defendant Coleman, one of her teachers at KIPP DC, began grooming her to gain her trust. Compl. ¶ 15. Then, in January 2005, Plaintiff alleges that Defendant Coleman began sexually abusing her for nearly five years. Id. For the 2006-2007 school year, Plaintiff transferred to another school for ninth grade while Defendant Coleman left KIPP DC and began his employment with Capital City, where he remain an employee until his employment was terminated in 2015. Compl. ¶¶ 18, 36, 55.

In 2007, when she was 16 years old, Plaintiff alleges that she took up residence with Defendant Coleman at his home in Montgomery County, Maryland.  Compl. ¶¶ 13, 38. Their 'relationship' ended by either June or late Fall 2009. Compl. ¶¶ 13, 58. Plaintiff does not provide her date of birth anywhere within the Complaint.

Plaintiff alleges that "[i]n or about the academic school year 2004-2005, Plaintiff's mother informed the principal at KIPP DC that Defendant Coleman was living with her minor daughter and engaging in sexual relations with her . . . ." Compl. ¶ 18. But see Compl. ¶ 13 (alleging Plaintiff moved in with Defendant Coleman in 2007). Plaintiff also alleges that at some point from 2006 to 2007, her mother "**learned** of defendant Coleman's sexual abusive [sic] of Plaintiff" and reported the abuse to Capital City.  Compl. ¶ 56. Obviously, these two allegations are factually inconsistent as, according to paragraph 18, Plaintiff's mother knew about the alleged abuse in or around 2004-2005. Plaintiff's mother is never identified by name and absolutely no details about the phone

2

call are alleged other than the call allegedly occurred within a two-year span. Plaintiff does not identify the person at Capital City with whom Plaintiff's mother allegedly communicated.

Plaintiff also alleges, upon "information and belief," that Ms. Ettinger, former principal of KIPP DC, told an unidentified board member of Capital City at an unidentified time that she had "suspicions" Defendant Coleman abused the Plaintiff. Compl. ¶ 51. These are the only two allegations regarding any alleged notice to Capital City of Defendant Coleman's actions.

On or about February 20, 2015, Plaintiff began to message Defendant Coleman on Facebook. Compl. ¶ 59. Then, on or about February 25, 2015, "Plaintiff came to the realization that the relationship with Defendant Coleman had been wrong and abusive and asked him to resign from his teaching position at Defendant Capital City." Compl. ¶ 60. Plaintiff reported the abusive relationship to Capital City for the first time in 2015 and Defendant Coleman's position at Capital City was terminated in 2015. Compl. ¶¶ 61-62.

## III.   PROCEDURAL HISTORY AND THIS COURT'S PRIOR DISMISSAL OF PLAINTIFF'S CLAIMS

Plaintiff initially filed a complaint, that is almost verbatim with the Complaint filed in this case, against all of the same defendants on February 2, 2018 in this Court, which has a case number of 1:18-cv-00260-RC (hereinafter "Prior Litigation"). In the Prior Litigation, Capital City responded to the complaint by filing a Motion to Dismiss, arguing that Plaintiff's claims were barred by the statute of limitations or otherwise failed to state a claim. (docket entry 13, filed Apr. 20, 2018). Plaintiff responded by filing an Opposition

3

(docket entry 18, filed May 14, 2018), to which Capital City replied (docket entry 20, filed May 21, 2018).

Judge Contreras granted Capital City's Motion to Dismiss and dismissed the case without prejudice. (docket entry 21, entered Jan. 3, 2019). Judge Contreras' Memorandum Opinion (docket entry 22, filed Jan. 3, 2019) does not explain why he dismissed the case without prejudice, but the Court specifically held that Plaintiff's claims were time-barred and the discovery rule did not apply. The case was then closed on February 14, 2019. No appeal was filed.

Plaintiff refiled this action on April 6, 2021, alleging the same facts against the same defendants, however, Plaintiff has alleged new causes of action that make direct claims of negligence against the "School Defendants" for failing to protect her from Defendant Coleman. Throughout the Complaint, Plaintiff continuously and inappropriately combines allegations against KIPP DC and Capital City as collective "School Defendants," despite the fact that Plaintiff was never a student at Capital City. Compl. ¶¶ 4, 19. Further, while Defendant Coleman is named as a Defendant, it does not appear that any causes of action are for the actual abuse she suffered – rather her claims are solely against the School Defendants for allegedly failing to keep her safe. What is notable is that even though Plaintiff has had over two years to investigate her claims, there are absolutely no new allegations regarding Capital City's alleged knowledge of Defendant Coleman's actions, how Capital City could possibly owe Plaintiff any duty, or how Capital City's alleged actions or omissions caused Plaintiff's injuries. Furthermore, Plaintiff's action is no more timely than it was in 2018 and her claims are barred by claim preclusion. Therefore, Capital City requests that this Court dismiss this case with prejudice.

4

## IV.   PLAINTIFF'S CLAIMS AND CHOICE OF LAW

Plaintiff has alleged four counts against Capital City, all of which are based on tort theories of law: (a) Negligent Supervision and Hiring/Retention (Count II); (b) Negligence (Count III); (c) Intentional Infliction of Emotional Distress (Count V); (d) Negligent Infliction of Emotional Distress (Count VI).

Plaintiff alleges that subject matter jurisdiction is proper pursuant to diversity of citizenship under 28 U.S.C. § 1332. "A federal court sitting in diversity must apply state law to the substantive issues before it." A.I. Trade Fin. v. Petra Int'l Banking Corp., 62 F.3d 1454, 1458 (D.C. Cir. 1995) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 82 (1938)). "For this purpose, the statute of limitations is substantive; therefore, a federal court sitting in diversity looks to state law to determine whether a cause of action based upon state law has expired." Id. (citing Guar. Trust Co. v. York, 326 U.S. 99 (1945)). "In determining which state's limitation period applies, the federal court looks to the choice-of-law rules of the state in which it sits." Id. (citing Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941). "The District of Columbia applies the substantial interest test, focusing on the place of the injury, the place were [sic] the injurious conduct occurred, the residency of the parties, and the place the parties' relationship is centered." Edwards v. Okie Dokie, Inc., 473 F. Supp. 2d 31, 39 (D.D.C. 2007) (citing Jaffe v. Pallotta TeamWorks, 374 F.3d 1223, 1227 (D.C. Cir. 2004)). Capital City submits that the District of Columbia's law applies to the state law claims because it is the place where a majority of the alleged injuries occurred, all parties reside in D.C., and it is the place that connects Capital City to the Plaintiff.

5

## V.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires the Complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (hereafter, "Iqbal"); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (hereafter, "Twombly"). The U.S. Supreme Court held that although "Rule 8 does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

The Supreme Court articulated two key principles applicable to the evaluation of a complaint on a motion to dismiss. First, the district court need not accept as true allegations that are legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679 (citing Twombly, 550 U.S. at 556). The second step requires the court "to draw on its judicial experience and common sense" and determine whether the facts allow it to "infer more than the mere possibility of misconduct." Id. Justice Kennedy succinctly summarized these principles as follows:

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. In reviewing a threshold motion to dismiss, a district court should only consider the

6

factual allegations made in the complaint; the court is not required to accept as true legal conclusions set forth in the complaint. Papasan v. Allain, 478 U.S. 265, 286 (1986).

## VI.   DISCUSSION OF THE LAW

### A.   Capital City Adopts the Arguments Made in Defendant KIPP DC's Motion to Dismiss.

Co-Defendant KIPP DC filed a Motion to Dismiss on June 7, 2021 (docket entry 11). Capital City joins Defendant KIPP DC's arguments and submits that this Complaint is barred by claim preclusion. In addition, the recent amendments to the statute of limitations governing claims arising from sexual abuse[1] do not revive Plaintiff's claims. To the extent that this Court interprets the recent amendments to the statute of limitations as capable of reviving adjudicated claims, this Court must find that D.C. Law 22-311 is unconstitutional as applied to Capital City because it is a legislative attempt to overturn a prior final judgment.

### B.   Plaintiff's claims are factually inconsistent and fail to state a claim for which relief can be granted.

Plaintiff's Complaint fails to state a claim for which relief can be granted and must be dismissed. Generally, the Complaint contains very few general allegations against Capital City and almost no specific allegations against Capital City. In all four of her claims against Capital City, Plaintiff alleges the same nine 'failures' or breaches of duties, see Compl. ¶¶ 82, 94, 108, 118, however, Plaintiff fails to allege specifically what duty Capital City owes Plaintiff or the basis for any duty. Plaintiff's Complaint similarly fails as there are insufficient facts for this Court to find that any act or omission by Capital City caused

---

[1] D.C. Code § 12-301(11) was recently amended pursuant to the D.C. Law 22-311, known as the "Sexual Abuse Statute of Limitations Amendment Act of 2018," to expand the time when a sexual abuse victim could bring a civil suit.

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD • SUITE 400 • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

Plaintiff's injuries. Thus, despite the fact that Plaintiff has had over two years since her complaint in the Prior Litigation was dismissed, Plaintiff's Complaint is still woefully deficient and fails to state a claim.

   i.  <u>Counts II, III, and VI are Barred by D.C. Code 38-1802.04(c)(17).</u>

Plaintiff's negligence claims against Capital City must fail because D.C. Code § 38-1802.04(c)(17) grants immunity to charter schools for such claims. D.C. Code § 38-1802.04(c)(17) provides that public charter schools are immune from civil liability for any act that is not (1) gross negligence; (2) an intentional tort; or (3) criminal in nature. Plaintiff alleges various acts of negligence in counts in Counts II, III, and VI. These claims are barred by the immunity statute. <u>See</u> <u>Lee v. Seed Pub. Charter Sch. of Wash.</u>, Civil Action No. 18-2786 (CKK), 2020 U.S. Dist. LEXIS 152061, *20 (D.D.C. Aug. 21, 2020) (dismissing claims for negligent infliction of emotional distress and negligence); <u>A.M. v. Bridges Pub. Charter Sch.</u>, 292 F.Supp.3d 441, 444 (D.D.C. 2018) (dismissing claim for negligence and negligent supervision). Thus, Counts II, III, and VI must be dismissed with prejudice because they allege simple negligence, which is insufficient to overcome statutory immunity.

   ii.  <u>Capital City Does Not Owe Any Plaintiff Any Duty.</u>

Counts II (negligent hiring), III (negligence), and VI (negligent infliction of emotional distress) all fail because Plaintiff has failed to allege sufficient facts for this Court to find that Capital City owed Plaintiff any duty. Plaintiff has failed to allege or explain how Capital City, a charter school, owes a duty to a non-student. It appears that Plaintiff is arguing that because Capital City is a charter school, they owe a duty to all minors that their staff interact with, regardless of whether the staff is acting within the scope of their employment

8

or not. Plaintiff's contentions are without merit and this Court must dismiss Counts II, III, and VI as to Capital City with prejudice.

"[A] person is 'liable to another only when he owes him some duty of care.'" Haynesworth v. D.H. Stevens Co., 645 A.2d 1095, 1098 (D.C. 1994) (quoting Lipnick v. United States, 717 F. Supp. 902, 904 (D.D.C. 1989)). "In general . . . there is only a minimal duty – if any – owed to a party who is at arm's length." Hedgepeth v. Whitman Walker Clinic, 22 A.3d 789, 794 (D.C. 2011). The District of Columbia uses a 'foreseeability of harm test' to determine whether a duty exists between a plaintiff and a defendant.

> In determining the existence of a duty owed to a plaintiff, [courts] have applied a "foreseeability of harm" test, which is based on the recognition that duty must be limited to avoid liability for unreasonably remote consequences. . . . *Inherent also in the concept of duty is the relationship between the parties out of which the duty arises.* . . . [U]ltimately, the determination of whether a duty should be imposed is made by weighing the various policy considerations and reaching a conclusion that the plaintiff's interest[s] are, or are not, entitled to legal protection against the conduct of the defendant.

Id. (quoting Odemns v. District of Columbia, 930 A.2d 137, 142 (D.C. 2007)) (emphasis in original). In fact, "'the relationship between the parties is *the key* to determining whether the defendant had a legally enforceable duty to the plaintiff' . . . ." Id. (citations omitted) (emphasis in original). This is because:

> [t]here are . . . a good many defendants, and a good many situations, as to which there is no such duty [to exercise the care of a reasonable person]. In other words, the defendant is under no legal obligation toward the particular plaintiff to act with the care of a reasonable [person], and he is not

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD • SUITE 400 • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

liable even though his conduct falls short of that standard, and the other is injured as a result.

Id. at 142 n. 9 (quoting Prosser & Keaton on Torts § 53, at 358 (5th ed. 1984)); see also McKethan v. WMATA, 588 A.2d 708, 712 (D.C. 1991) (finding common carrier owes no special duty to non-passengers).

To be clear, there is no relationship between Plaintiff and Capital City. Plaintiff fails to allege any facts to support a finding that a relationship existed with Capital City. In her claim for negligent supervision, Plaintiff inaccurately alleges that Capital City "had a fiduciary relationship with Plaintiff as both a student and a minor under the age of 18." Compl. ¶ 80. However, Plaintiff was never a student of Capital City, the alleged abuse never took place on Capital City's grounds, and the alleged abuse never took place while Defendant Coleman was acting within the scope of his employment with Capital City. Thus, there is absolutely no basis to allege that Capital City was in a fiduciary relationship with Plaintiff.

In her claim for negligence, Plaintiff never even alleges that Capital City actually owed her a duty; she simply alleges that Capital City breached the duty owed to her. Compl. ¶ 94. In her claim for NEID, Plaintiff simply alleges that Capital City "had a duty to Plaintiff to refrain from engaging in the above-described conduct that it knew, or should have known, would foreseeably cause emotional distress to her." Compl. ¶ 116. Plaintiff's conclusory allegations that a duty is owed to her are not supported by the facts alleged in the Complaint. Plaintiff is simply a member of the general public alleging that Capital City owes a public duty to protect all minors that encounter their employees, even when those employees are not acting within the scope of their employment are not on school

10

property.[2] There is absolutely no precedent to support this argument. Thus, Plaintiff's claims for negligence must be dismissed with prejudice

     iii.     <u>Plaintiff's Claims for Negligent Supervision and Hiring/Retention Further Fail to State a Claim.</u>

Plaintiff's claim for Negligent Supervision and Hiring/Retention is not actually a claim for Negligent Supervision and Hiring/Retention. A typical negligent hiring/retention claim would argue that Capital City was negligent in its decision to hire and retain a certain employee, i.e. Defendant Coleman. <u>See, e.g.</u>, <u>Phelan v. City of Mt. Rainier</u>, 805 A.2d 930, 936-37 (D.C. 2002). Instead, all of the allegations related to this claim allege a failure to "appropriately investigate, screen, monitor, and respond to complaints of sexual assault and rape it had actual or constructive knowledge of concerning Defendant Coleman." Compl. ¶ 86. As argued above, there is no common law duty to investigate claims of sexual abuse of a non-student. <u>See also</u> <u>Prasad v. George Washington Univ.</u>, 390 F.Supp. 3d 1, 41-42 (D.D.C. 2019) (dismissing claim for negligent supervision, in part, because plaintiff failed to prove the existence of a common law duty to protect <u>a student</u> from sexual harassment).

Even if this Court were to take Plaintiff's Complaint at face value and consider a claim for hiring/retention of Defendant Coleman, Plaintiff's claims would still fail. First, negligent supervision claims must be predicated on a common law duty, <u>see id.</u>, which,

---

[2] Plaintiff's belief that all schools owe a general duty to the public is evidenced throughout the Complaint. For example, Plaintiff alleges four times that Capital City "[f]ail[ed] to investigate, correct, and/or otherwise address the openly pervasive environment of sexual harassment and sexual objectification of its female students by its male teachers." Compl. ¶¶ 82(c), 94(c), 108(c), 118(c). This alleged 'failure' is not a legal duty that Capital City owed to Plaintiff. To the extent that Capital City even owes this duty to anyone, it would be to its own students.

11

as argued above, Plaintiff has failed to allege. Further, "an action for negligent supervision and retention requires proof that the employer breached a duty to plaintiff to use reasonable care in the supervision or retention of an employee which proximately caused harm to plaintiff." Phelan, 805 A.2d at 940 (citations omitted) (emphasis added). There must be a causal nexus between the failure to discipline the employee and the plaintiff's injuries. See id. (affirming trial court's dismissal of claims for negligent retention where an off-duty police officer shot a man even though the City had evidence that the officer had disciplinary problems because there was a lack of causation).

Here, Defendant Coleman's employment has nothing to do with the injuries claimed by Plaintiff because Plaintiff was never a student, none of the alleged acts occurred on campus, and Plaintiff never alleges that any of the abuse occurred while Defendant Coleman was executing any duties within the scope of his employment at Capital City. Simply put, there is absolutely no authority for the argument that every employer, no matter what, is liable for employing a criminal. Thus, Plaintiff's claims for Negligent Supervision and Hiring/Retention must be dismissed with prejudice.

      iv.       Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails to State a Claim.

Plaintiff has failed to allege sufficient facts to support a claim for intentional infliction of emotional distress. To survive a motion to dismiss, a plaintiff must allege facts to demonstrate: "(1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." Williams v. District of Columbia, 9 A.3d 484, 493-94 (D.C. 2010) (affirming trial court's decision to dismiss an IIED claim on a motion to dismiss where plaintiff alleged that his employer

12

defamed his character and represented that plaintiff had been fired for embezzlement). To survive a motion to dismiss, the plaintiff must allege "conduct that was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Bernstein v. Fernandez, 649 A.2d 1064, 1075 (D.C. 1991)); see also Doe v. Bernabei & Wachtel, PLLC, 116 A.3d 1262, 1269 (D.C. 2015) (affirming a trial court's decision to dismiss a claim for IIED on a motion to dismiss where a video of plaintiff's alleged sexual assault was provided, without her consent, to news outlets by defendants and defendants disclosed plaintiff's identity to the public, causing plaintiff severe emotional distress). There is no general common law duty to avoid causing mental distress, Waldon v. Convington, 415 A.2d 1070, 1078 (D.C. 1980), and, in fact, a defendant "is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Restatement 2d of Torts, § 46, cmt. g.

Here, Plaintiff has failed to allege any facts that would support a finding that Capital City's conduct was 'so outrageous' or 'utterly intolerable.' Plaintiff alleges two instances in which Capital City was allegedly informed that Defendant Coleman was sexually abusing Plaintiff. Plaintiff alleges that at some point from 2006 to 2007, her mother "learned of defendant Coleman's sexual abusive [sic] of Plaintiff" and reported the abuse to Capital City. Compl. ¶ 56. However, this statement is factually inconsistent with other allegations stated within the Complaint, which state that "[i]n or about the academic school year 2004-2005, Plaintiff's mother informed the principal at KIPP DC that Defendant Coleman was living with her minor daughter and engaging in sexual relations with her . .

13

. ." Compl. ¶ 18. Plaintiff also alleges, upon "information and belief," that Ms. Ettinger, former principal of KIPP DC, told an unidentified board member of Capital City at an unidentified time that she had "suspicions" Defendant Coleman abused the Plaintiff. Compl. ¶ 51. Because Capital City failed to react to these alleged reports, Plaintiff submits that such <u>failure to act</u> created "the <u>opportunity</u> for Plaintiff to be sexually assaulted and harassed." Compl. ¶109 (emphasis added). There are no specific allegations regarding malice or specific intent to harm Plaintiff.

Capital City's alleged omissions and failures to act in response to unsubstantiated reports do not rise to the level of "extreme and outrageous conduct." First, as argued numerous times throughout this Motion, Capital City does not owe a general duty to protect Plaintiff. Second, in considering Plaintiff's allegations regarding the alleged reports, the report made by Plaintiff's mother is factually inconsistent with other allegations in the Complaint. Further, the report to the Capital City board member is so vague it does not even provide the date the report was allegedly made or the identity of the board member. Considering Plaintiff has had over three years since she first filed the complaint in the Prior Litigation and over six years since she allegedly realized that she had been sexually abused, it is notable that she is not able to provide any specific facts regarding either of the reports that Capital City allegedly received.

While it appears to be an issue of first impression in the District of Columbia, other courts have held that a failure to act, or an omission, cannot form the basis of a claim for intentional infliction of emotional distress; a defendant must make an affirmative act. <u>See, e.g.</u>, <u>Doe v. Liberatore</u>, 3:04-CV-2427, 2007 U.S. Dist. LEXIS 35372, at *8 (M.D. Pa. May 25, 2007) (citations omitted) (denying a motion to reconsider a dismissal of plaintiff's claim

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD   •   SUITE 400   •   FAIRFAX, VIRGINIA 22030   •   (703) 385-1000   •   FAX (703) 385-1555

for IIED against Catholic Church entities where plaintiff was sexually abused by a priest and Catholic Church entities did nothing to stop the abuse even after they had actual knowledge of the abuse). In a case such as <u>Doe v. Liberatore</u> and this one, where there is no evidence that Capital City took any affirmative action to harm the plaintiff intentionally, there is a lack of causation because "it was the sexual abuse of [Defendant Coleman] . . . which caused Plaintiff severe emotional distress."[3] To be clear, Plaintiff has alleged that Capital City's actions created the "opportunity" for her to be abused, Compl. ¶109, but does not allege that Capital City took any affirmative action to participate in the abuse itself or some other intentional act. Therefore, for all the reasons stated above, this Court must dismiss Plaintiff's claims for intentional infliction of emotional distress.

> v.    <u>Plaintiff's Claim for Punitive Damages Must Fail as a Matter of Public Policy</u>

Plaintiff's claim for punitive damages should be dismissed as a matter of law. It is against the public policy of the District of Columbia to award punitive damages against Capital City because of its status as a non-profit corporation.[4] The District of Columbia no longer recognizes common law charitable immunity. However, by statute, a non-profit's liability is limited to the amount of insurance coverage. D.C. Code § 29-406.91(e). The Council of the District of Columbia has elected to strike a balance between competing

---

[3] The same argument applies to Plaintiff's claim for negligent infliction of emotional distress – it was not Capital City's failure to respond the alleged reports of abuse it received that caused Plaintiff's harm; it was the sexual abuse inflicted by Defendant Coleman. Thus, Plaintiff's claims for negligent infliction of emotional distress can similarly be dismissed with prejudice.

[4] D.C. Code § 38-1802.04(c)(16) provides: A public charter school shall be organized under Chapter 4 of Title 29 and its sole purpose shall be the operation of the public charter school.

15

policy interests and limit a non-profit's exposure to available insurance coverage. This allows an injured plaintiff to recover for tortious injuries, while protecting the public's interest in encouraging the good work of the charitable organization to proceed.

Additionally, it is against public policy for insurance money to be used to pay a punitive damages award. See Curry v. Giant Food Co., 522 A.2d 1283, 1290 (D.C. 1984) ("If the purpose of punitive damages is to impose real punishment upon the tortfeasor, such purpose would plainly not be accomplished if the wrongdoer was relieved of any financial loss by an insurance policy . . . . [e]ven when the defendant himself subscribed to that policy."); see also Nat'l R. Passenger Corp. v. Consolidated R. Corp., 698 F.Supp. 951, 970-71 (D.D.C. 1988). Therefore, because Capital City's liability is limited to insurance coverage, and insurance coverage cannot be used to pay punitive damages, Plaintiff's claims for punitive damages must be dismissed.

## C.   Plaintiff's claims are barred by the applicable statute of limitations.[5]

The District of Columbia's statute of limitations for negligent hiring, simple negligence, and negligent infliction of emotional distress is three years. D.C. Code § 12-301(8); see also Hunter v. District of Columbia, 943 F.2d 69, 73 (D.C. Cir. 1991) (negligent hiring); Tolbert v. Nat'l Harmony Mem'l Park, 520 F.Supp.2d 209, 212 (D.D.C. 2007) (negligence and negligent infliction of emotional distress). No single statute of limitations governs claims for intentional infliction of emotional distress. Hunter, 943 F.2d at 72. Rather, courts look to the underlying alleged facts to see if the claim for IIED is tied to any

---

[5] A Motion to Dismiss based on an affirmative defense is permitted "when the facts that give rise to the defense are clear from the face of the complaint." Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998); see also Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996).

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD • SUITE 400 • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

of the other causes of action outlined in D.C. Code § 12-301. See id. Plaintiff's IIED claim is based on the same facts and 'failures' as Plaintiff's negligence claims. See Compl. ¶¶ 82, 94, 108, 118 (listing the same nine alleged breaches of duties for all four counts against Capital City). Thus, this Court must apply the three-year statute of limitations. However, even if the Plaintiff did adequately plead facts to support an independent claim for IIED, Plaintiff would still only be granted a three-year statute of limitations. Hunter, 943 F.2d at 72.

Capital City anticipates that Plaintiff will argue that the amended D.C. Code § 12-301(11) applies[6], which provides:

> for the recovery of damages arising out of sexual abuse that occurred while the victim was less than 35 years of age— the date the victim attains the age of 40 years, or 5 years from when the victim knew, or reasonably should have known, of any act constituting sexual abuse, whichever is later.

D.C. Code § 12-301(11) (emphasis added). However, Plaintiff does not and cannot allege that Capital City ever sexually abused her. Rather, Plaintiff charges Capital City with failures to investigate and report the alleged allegations of sexual abuse and with failures to appropriately train their staff to identify sexual abuse. To be clear, none of the causes of action alleged against Capital City appear to be based on vicarious liability for the actions of Defendant Coleman – they are brought solely against Capital City for its alleged independent actions or omissions. Thus, the damages that the Plaintiff allegedly suffered at the hands of Capital City did not stem from sexual abuse and D.C. Code § 12-301(11)

---

[6] In the Prior Litigation, Judge Contreras' Order did not discuss which statute of limitations applied because, no matter which statute of limitation was applied to Plaintiff's claims, Plaintiff's claims would still have been untimely.

BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.
9990 FAIRFAX BOULEVARD • SUITE 400 • FAIRFAX, VIRGINIA 22030 • (703) 385-1000 • FAX (703) 385-1555

does not apply. Therefore, Plaintiff's claims are time-barred by the requisite three-year statute of limitations and her claims must be dismissed with prejudice.

## VII.   CONCLUSION

WHEREFORE, the foregoing considered, defendant Capital City Public Charter School, Inc., by counsel, moves this Court to dismiss this cause of action with prejudice and award it costs expended.

CAPITAL CITY PUBLIC CHARTER SCHOOL, INC.
By Counsel

BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:   (703) 385-1000
Facsimile:   (703) 385-1555


_____/s/ Emily K. Blake_____
John D. McGavin, Esq. (Bar ID: 475899)
Emily K. Blake, Esq. (Bar No. VA053)
jmcgavin@bmhjlaw.com
eblake@bmhjlaw.com
*Counsel for Defendant Capital City Public Charter School, Inc.*

**BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C.**
9990 FAIRFAX BOULEVARD   •   SUITE 400   •   FAIRFAX, VIRGINIA 22030   •   (703) 385-1000   •   FAX (703) 385-1555