**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| SHANIQUE PEREZ, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-929 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 11, 16 |
| | : | | |
| KIPP DC SUPPORTING CORPORATION, | : | | |
| *et. al*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT KIPP DC'S MOTION TO DISMISS; GRANTING DEFENDANT CAPITAL
CITY PUBLIC CHARTER SCHOOL'S MOTION TO DISMISS**

**I.  INTRODUCTION**

This is the second action filed by Plaintiff Shanique Perez in which she seeks civil

damages as a result of the years of sexual abuse that she suffered as a minor student at the hands

of her one-time teacher.  This Court first considered Ms. Perez's claims in January 2019 and

dismissed them as time-barred under the controlling D.C. statute of limitations in *Doe v. KIPP*

*DC Supporting Corp.*, 373 F. Supp. 3d 1 (D.D.C. 2019).  A few months thereafter, the D.C.

Sexual Abuse Statute of Limitations Amendment Act became effective and extended the relevant

statute of limitations for civil actions arising out of sexual abuse.  Although the result is no doubt

disappointing to Ms. Perez, the Court determines that its previous decision was already final and

claim preclusion bars this case notwithstanding the subsequent change in the law.  Accordingly,

it grants Defendants' motions to dismiss.

## II.  BACKGROUND

### 1.  Coleman's Abuse of Ms. Perez

Ms. Perez was a student at KIPP DC from approximately 2001 to 2005. Compl. ¶ 13, ECF No. 1.[1]  She first came into contact with Defendant Alan Coleman during the 2003–2004 school year, when he was her eighth-grade science and history teacher and her drumline coach. *Id.* ¶ 24.  At the time, Coleman was 34 years old, and Ms. Perez was only 14.  *Id.* ¶¶ 14–15. Coleman manipulated her with gifts and attention, including making Ms. Perez his "teacher['s] assistant" and taking her on a "first date."  *Id.* ¶¶ 15, 25–27.  Within a few months, Coleman began sexually assaulting Ms. Perez on a regular basis.  *Id.* ¶¶ 28–32.  He continued to abuse her for the remainder of the 2004-2005 school year.  *Id.* ¶ 34.

Ms. Perez began attending a different school in the fall of 2006.  *Id.* ¶ 36.  She alleges on information and belief that KIPP DC terminated Coleman's employment based on suspicions of his inappropriate actions with Perez in approximately the 2005–2006 school year, but that Coleman was soon thereafter hired by Defendant Capital City Public Charter School.  *Id.* ¶ 55. Meanwhile, the abusive relationship continued.  *Id.*  In addition to subjecting Ms. Perez to frequent sexual assault and humiliation, Coleman forbade her from attending a prestigious out-of-state school where she had earned a full scholarship because it would require her to move away from him.  *Id.* ¶¶ 30–33, 37.

At some point during the 2006–2007 school year, Ms. Perez's mother learned of the ongoing sexual assault and abuse and reported it to Coleman's employer, Capital City Public Charter school, which failed to investigate or take any disciplinary action against Coleman.

---

[1] Factual allegations are drawn from the Complaint and presumed to be true for the purpose of deciding this 12(b) motion.  *See United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

*Id.* ¶ 56.  Ms. Perez likewise alleges that KIPP DC took no action to investigate Coleman's behavior or otherwise protect her and allowed Coleman to have unrestricted and unsupervised contact with her throughout his employment at KIPP.  *Id.* ¶¶ 48–49.  And despite Ms. Perez's mother's attempts at intervention, Coleman persuaded Ms. Perez to move into his house in 2007. *Id.* ¶¶ 38–39.  Ms. Perez continued to live with Coleman until approximately the fall of 2009.  *Id.* ¶ 58.  During that time, Coleman sexually abused her on a regular basis and became increasingly controlling over all aspects of her life, including restricting her social interactions.  *Id.* ¶ 57.

Ms. Perez ended her relationship with Coleman in 2009, but it was not until 2015 that she began to realize the wrongfulness and abusiveness of his behavior.  *Id.* ¶¶ 58–60.  In February 2015 she asked Coleman to resign from his teaching position at Capital City, where he was still employed.  *Id.* ¶ 60.  After he failed to do so, Ms. Perez contacted Capital City herself and informed them of the sexually abusive relationship that Coleman had with her while she was a minor.  *Id.* ¶ 61.  Capital City terminated Coleman's employment but did not notify the authorities.  *Id.* ¶ 62.  The D.C. Metropolitan Police Department was not alerted to Coleman's conduct until April 2016, when Ms. Perez told another former KIPP teacher about the abuse and that teacher subsequently notified the police.  *Id.* ¶ 63.  Coleman was arrested and pleaded guilty to sexual abuse of a minor in Maryland state court and to first-degree sexual abuse in D.C. Superior Court.  *See* Docket, *People v. Coleman*, No. 130514C (Md. Montgomery Cnty. Cir. Ct.); Docket, *United States v. Coleman*, No. 2016 CF1 011951 (D.C. Super. Ct.).

## 2. The *Doe v. KIPP* litigation

Ms. Perez, under the pseudonym Jane Doe, filed a civil complaint with this Court on February 2, 2018, bringing 42 U.S.C. § 1983, Title IX, gross negligence, assault, battery, and intentional infliction of emotional distress claims against Coleman, KIPP DC, KIPP DC's

principal Ettinger,[2] and Capital City Public Charter School.  *See Doe v. KIPP DC Supporting Corp.*, 373 F. Supp. 3d 1, 5–6 (D.D.C. 2019).  At the time Ms. Perez brought the prior action, the parties debated which of two D.C. statute of limitations provisions applied to her claims: D.C. Code § 12-301(8), the catch-all provision establishing a three-year statute of limitations for claims not otherwise specified, or D.C. Code § 12-301(11), which established the statute of limitations for claims "arising out of sexual abuse that occurred while the victim was a minor" as "the later of seven years from the victim's eighteenth birthday or three years from 'when the victim knew, or reasonably should have known, of any act constituting abuse.'"  *See id.* at 10 (summarizing D.C. Code §§ 12-301(8) and (11) (2009)).  The Court held that because the discovery rule did not toll Ms. Perez's claims until she realized the wrongfulness of the abuse in 2015, her claims were time-barred as a matter of law under either provision.  *Id.* at 8, 11.  It likewise denied Ms. Perez's motion to amend the complaint without prejudice and entered an order dismissing the case "without prejudice."  *See* Order Granting Defs.' Mots. Dismiss, *Doe v. KIPP DC Supporting Corp., et al.*, No. 1:18-cv-00260-RC (D.D.C. Jan. 3, 2019), ECF No. 21. Ms. Perez did not seek leave to amend the complaint and did not appeal the dismissal.

3.  The Sexual Abuse Statute of Limitations Amendment Act of 2018

Since that time, §12-301(11) of the D.C. Code has been amended by the Sexual Abuse Statute of Limitations Amendment Act of 2018 ("Amendment Act").  *See* Sexual Abuse Statute of Limitations Amendment Act of 2018, D.C. Law 22-311, 66 D.C. Reg. 1398 (Feb. 1, 2019); *see also* 66 D.C. Reg. 5806 (May 10, 2019) (setting effective date of May 3, 2019).  That provision now applies to civil actions "arising out of sexual abuse that occurred while the victim

---

[2] Ettinger was initially named as a defendant in this lawsuit as well but has since been voluntarily dismissed by Perez.  *See* Notice Voluntary Dismissal Def. Susan Schaeffler Ettinger, ECF No. 5.

was less than 35 years of age" and sets the applicable limitations period as "the date the victim attains the age of 40 years, or 5 years from when the victim knew, or reasonably should have known, of any act constituting sexual abuse, whichever is later."  D.C. Code § 12-301(11) (2021).  In addition, the Amendment Act created a two-year revival period for claims "that would be time-barred under D.C. Official Code § 12–301 before the effective date of this act, but that would not be time-barred" by the amended act.  D.C. Law 22-311 § 5(a)(2).  The Amendment Act became effective on May 3, 2019.  *See id.* § 7; 66 D.C. Reg. 5806 (May 10, 2019).

Ms. Perez filed the present action in April 2021, reasserting many of the same claims, which she argues are now timely in light of the Amendment Act.  Defendants KIPP DC and Capital City have both filed motions to dismiss.  *See* Def. KIPP DC's Mot. Dismiss ("KIPP Mot."), ECF No. 11; Def. Capital City Public Charter School's Mot. Dismiss ("Capital City Mot."), ECF No. 16.  Oppositions and replies have been filed, and the matter is ripe for resolution.  *See* Pl.'s Mem. L. Opp'n to Def. KIPP DC's Mot. Dismiss ("Pl.'s KIPP Opp'n"), ECF No. 12; Def. KIPP DC's Mem. P. & A. Supp. Mot. Dismiss ("KIPP Reply"), ECF No. 13; Pl.'s Mem. L. Opp'n to Def. Capital City Public Charter School's Mot. Dismiss ("Pl.'s Capital City Opp'n"), ECF No. 18; Def. Capital City's Reply Mem. Supp. Mot. Dismiss ("Capital City Reply"), ECF No. 19.

### III.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Brewer v. District of Columbia*, 891 F. Supp. 2d 126, 130 (D.D.C. 2012).  A

court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Still, the complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Res judicata serves "to conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent . . . piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Montana v. United States*, 440 U.S. 147, 153–54 (1979). Affirmative defenses, such as res judicata, "may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998); *see also Tinsley v. Equifax Credit Info. Servs., Inc.*, No. 99-7031, 1999 WL 506720, at *1 (D.C. Cir. June 2, 1999) ("[A]ppellees' assertion of the affirmative defense of res judicata in its dispositive motion, rather than in a responsive pleading, did not preclude the district court from considering the issue." (citation omitted)). "Res judicata is 'properly brought in a pre-answer Rule 12(b)(6) motion when all relevant facts are shown by the court's own records . . . .'" *Ponder v. Chase Home Fin., LLC*, 865 F. Supp. 2d 13, 16 n.2 (D.D.C. 2012) (quoting *Camp v. Kollen*, 567 F. Supp. 2d 170, 172 n.3 (D.D.C. 2008)). "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).

## IV.  ANALYSIS

### A.  Claim Preclusion Bars this Action

Defendants[3] argue that the doctrine of res judicata—specifically, claim preclusion—bars the Court from considering Ms. Perez's claims in the present action.  Res judicata consists of either issue preclusion, which prevents "relitigation of issues actually litigated and determined in the prior suit," and claim preclusion, which prevents relitigation where there has been "a final judgment on the merits in a prior suit involving the same parties or their privies . . . on the same cause of action."  *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946–47 (D.C. Cir. 1983).  Claim preclusion applies where the prior and current litigation "(1) involv[e] the same claims or cause of action, (2) [are] between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction."  *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006); *see also Tembec Inc. v. United States*, 570 F. Supp. 2d 137, 140–41 (D.D.C. 2008); *Paley v. Est. of Ogus*, 20 F. Supp. 2d 83, 87 (D.D.C. 1998).  The parties do not dispute that the prior action in *Doe v. KIPP* involved the same parties and that this Court was a court of competent jurisdiction.

The Court can also quickly dispose of Ms. Perez's suggestion that her "new causes of action not previously asserted or plead[ed]" might defeat the "cause of action" element of claim preclusion.  *See* Pl.'s KIPP Opp'n at 6–7; Pl.'s Capital City Opp'n at 7.  "Unlike issue preclusion, claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated."  *Lucky Brand Dungarees,*

---

[3] Although the primary arguments involving claim preclusion are only developed in KIPP's motion to dismiss, Capital City Public Charter School adopted those arguments in its own motion.  *See* Capital City Mot. at 7.  The Court will therefore treat them as having been raised by both defendants.

*Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020).  Two claims are for "the same cause of action" for the purposes of claim preclusion if they are "based on the same nucleus of facts."  *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984) (internal quotations omitted).  The facts in the present action are the exact same ones underlying the prior action, and Ms. Perez could have brought all of the present counts in the prior lawsuit.  The unity of the "cause of action" in these two cases, which arise from the very same facts, is beyond doubt.  *See Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217–18 (D.C. Cir. 2004) ("There are no new facts. [Plaintiff] is simply raising a new legal theory. This is precisely what is barred by *res judicata*.").

The central question is whether the Court's prior decision, which dismissed the case without prejudice as time-barred, was a final judgment on the merits.  On the one hand, "[t]he rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds . . . as a judgment on the merits."  *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995).  The D.C. Circuit and other courts in this district have routinely treated dismissals on statute-of-limitations grounds as final judgments on the merits for the purposes of *res judicata*.  *See Smalls*, 471 F.3d at 192 (treating a dismissal on statute-of-limitations grounds as a final judgment on the merits); *Richardson v. Sauls*, 319 F. Supp. 3d 52, 65–66 (D.D.C. 2018) (same); *Lamont v. Proskauer Rose, LLP*, 881 F. Supp. 2d 105, 112 (D.D.C. 2012) (same).  Ms. Perez's citations to cases in which the claim at issue could not have been asserted in the prior action for more general procedural reasons do not undermine this uncontroversial principle.  *See North v. Walsh*, 881 F.2d 1088, 1093 (D.C. Cir. 1989) (holding that a FOIA claim could not have been asserted during an earlier grand jury proceeding); *Wemhoff v. Floria*, 961 F.2d 964 (D.C. Cir. 1992) (unpublished table decision) (suggesting that if a party had been prevented from raising certain issues as a result of bifurcation, "there would be good reason not to extend the *res*

*judicata* bar to issues that the appellant was prevented from raising"); *Hagee v. City of Evanston*, 95 F.R.D. 344, 345 (N.D. Ill. 1982) (suggesting that the right to amend the complaint under a prior version of Rule 15 survived even the granting of a motion to dismiss).

Ms. Perez places great emphasis on the fact that the *Doe* litigation was dismissed "without prejudice."  *See* Order Granting Defs.' Mots. Dismiss, *Doe v. KIPP DC Supporting Corp., et al.*, No. 1:18-cv-00260-RC (D.D.C. Jan. 3, 2019), ECF No. 21.  In addition to opposing the statute of limitations defenses in the *Doe* litigation, Ms. Perez had made a request in her opposition brief to amend the complaint.  *Doe v. KIPP*, 373 F. Supp. 3d at 15.  This Court denied that motion for failure to comply with the Local Rules but did so without prejudice.  *Id.*  Thus, by dismissing the case without prejudice, the Court likewise allowed Ms. Perez to "return[] later, to the same court, with the same underlying claim," through a motion for leave to amend the complaint.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001).  It is well-settled that "[d]ismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits, and thus does not have a res judicata effect."  *Cactus Canyon Quarries, Inc. v. Fed. Mine Safety & Health Rev. Comm'n*, 820 F.3d 12, 19 (D.C. Cir. 2016) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990)); *see also Brewer v. District of Columbia*, 891 F. Supp. 2d 126, 134 (D.D.C. 2012) ("If the prior action has been dismissed without prejudice, there has been no final judgment on the merits, and a plaintiff will not be precluded by the doctrine of res judicata from having his claims heard on the merits in a separate court."); *McAlister v. Potter*, 843 F. Supp. 2d 117, 121 (D.D.C. 2012) ("Because the claim was dismissed without prejudice, there was no final judgment on the merits, and *res judicata* does not apply." (quotations omitted)).

Nevertheless, the D.C. Circuit has recognized that even dismissal of a case without prejudice can effectively amount to a dismissal with prejudice if the relevant statute of limitation had already run.  *See Cohen v. Bd. of Trs. of the Univ. of the D.C.*, 819 F.3d 476, 479 (D.C. Cir. 2016) ("[H]ad the district court dismissed Cohen's complaint and case, both without prejudic[e], [C]ohen could have filed a new complaint in a new case only if the claims were still timely as of the new filing." (emphasis removed)); *Ciralsky v. CIA*, 355 F.3d 661, 672 (D.C. Cir. 2004) ("[W]hen a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit, so that if the statute of limitations has run the dismissal is effectively with prejudice." (quotation omitted)).  This rule follows from the fact that "[t]he finality that a court can pronounce is no more than what the law in existence at the time of judgment will permit it to pronounce."  *Plaut*, 514 U.S. at 234.

Against that backdrop, dismissing the *Doe* action "without prejudice" left the door open for Ms. Perez to attempt to allege new relevant facts or a legal theory with a longer statute of limitations.  But it was not, nor could it have been, an invitation to reassert the same claims that the Court had just determined were time-barred under the law in existence at the time.  Any attempt to do so would have been disallowed by the related doctrine of the law of the case, which "recognizes that 'court[s] involved in later phases of a lawsuit should not re-open questions decided.'"  *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257 (D.C. Cir. 2015) (alteration in original) (quoting *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995)).  It was likewise not an open-ended invitation to seek leave to amend into perpetuity.

In fact, Ms. Perez never sought leave to amend the complaint, or filed an appeal, or moved for any other post-relief judgment.  The D.C. Circuit "treat[s] dismissal of a case as declaring an end to the litigation, and thus as final and appealable despite the court's

specification that it is without prejudice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253

(D.C. Cir. 2020). And "once the time for appeal has run, a final judgment of a trial court . . . is

res judicata without regard to the fact that appeal might have been taken to a higher court." 18A

Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4433 (3d ed. 2021)

(citing *New Haven Inclusion Cases*, 399 U.S. 392, 479–81 (1970)). Ms. Perez's failure to take

any additional action thus put a definitive end to the litigation, making the Court's dismissal of

the *Doe* litigation a "final adjudication on the merits."

All four factors[4] of claim preclusion are therefore satisfied here. Regardless, Ms. Perez

argues that the Amendment Act has extended the relevant limitations period and that claim

preclusion "should not be applied so rigidly as to defeat the ends of justice." Pl.'s KIPP Opp'n at

5. Therefore, the Court next considers whether the Amendment Act nonetheless allows this

claim to go forward.

**B. The Sexual Abuse Statute of Limitations Amendment Act of 2018 does not Allow Ms. Perez to Overcome Claim Preclusion**

The Sexual Abuse Statute of Limitations Amendment Act of 2018, in relevant part,

amended the statute of limitations for civil actions "arising out of sexual abuse." *See* Sexual

Abuse Statute of Limitations Amendment Act of 2018, D.C. Law 22-311, 66 D.C. Reg. 1398

(Feb. 1, 2019). That provision previously applied to civil actions "arising out of sexual abuse

that occurred while the victim was a minor" but now applies to civil actions "arising out of

sexual abuse that occurred while the victim was less than 35 years of age." *Compare* D.C. Code

---

[4] At least a few cases treat whether "the nonmoving party had a full and fair opportunity to litigate the claim" as a separate requirement for claim preclusion. *See Lamont*, 881 F. Supp. 2d at 112 (citing *Li v. Montgomery*, No. 99-5106, 2000 WL 815992, at *1 (D.C. Cir. May 15, 2000)). None of the parties have addressed this as a separate issue, but the Court notes that Ms. Perez did have a full and fair opportunity to present her case in the *Doe* litigation. The fact that the Court dismissed the case on statute of limitations grounds did not lessen that opportunity.

§ 12-301(11) (2017) *with* D.C. Code § 12-301(11) (2021).  Likewise, the previous version set the statute of limitations at the later of either three years from when the plaintiff knew or should have known of the abuse or seven years from the plaintiff's eighteenth birthday, whereas the current statute sets the limitations period at the later of either five years from when the plaintiff knew or should have known of the abuse or the plaintiff's fortieth birthday.  *Compare* D.C. Code § 12-301(11) (2017) *with* D.C. Code § 12-301(11) (2021).

The Committee Report on the Act[5] stated that it believed this expansion was necessary because "statutes of limitations serve an incredibly important purpose, but in practice, they can function as arbitrary time limits that should be revisited as societal understandings of crime, victimization, and traumatization evolve."  D.C. Council, Report on Bill 22-0021, Comm. on the Judiciary and Pub. Safety, at 5 (Oct. 4, 2018).  The Committee Report acknowledged the testimony of recent high-profile survivors of sexual abuse regarding not only the severe consequences of the abuse itself, but also "tremendous barriers to reporting [those] crimes: barriers to identifying as a victim, shame or humiliation related to the abuse itself, and a fear— and, clearly, a reality—of being disbelieved or retraumatized."  *Id.* at 9.

Both the text and the legislative history of the Amendment Act thus demonstrate a clear concern for individuals such as Ms. Perez who, despite awareness of the actions constituting abuse, did not realize the wrongfulness of those actions or summon the courage to come forward until years after the fact.  Assuming the new § 12-301(11) applies to her claims,[6] the new statute

_____

[5] Although the Committee Report was not attached to the Complaint, "public records [are] subject to judicial notice on a motion to dismiss."  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

[6] In the *Doe* litigation, the Court did not squarely reach the issue of whether § 12-301(11) or one of the other limitations provisions in § 12-301 applied to Ms. Perez's negligence per se, gross negligence, Title IX, § 1983, and intentional infliction of emotional distress claims, though it noted that "the plain language of § 12-301(11) strongly suggests that the statutory provision

of limitations would apply to her because the sexual abuse occurred before Ms. Perez was 35, and she has not yet reached the age of 40.  *See Doe v. KIPP*, 373 F. Supp. 3d at 6 (noting that "Doe turned eighteen in 2008").

In addition to dramatically extending the limitations period and applicability of § 12-301(11), the Amendment Act contained a special applicability provision stating that the changes "shall apply to an action that accrues before, on, or after the effective date of this act, unless the statute of limitations for the action expired before the effective date of this act" and that "[n]otwithstanding any other provision of law, a claim for the recovery of damages that would be time-barred under . . . § 12-301 before the effective date of this act, but that would not be time-barred under [the amended statute], is revived and, in that case, a cause of action may be commenced within 2 years after the effective date of this act."  D.C. Law 22-311 § 5(a)(1)–(2).

It is unclear whether the statute is in fact meant to be retroactive to a claim such as Ms. Perez's.  The first part of the applicability provision states that the new limitations period "appl[ies] to an action that accrues before . . . the effective date of this act, unless the statute of limitations for the action expired before the effective date of this act."  *Id.* § 5(a)(1).  Alone, that phrase is ambiguous as to whether it is the expiration of the old or the new statute of limitations that would exclude a case from the coverage of this provision.  The second section, however, makes clear that the D.C. Council intended to cover cases that had already expired under the old statute of limitations for, at minimum, the two-year revival period.  *Id.* § 5(a)(2).  Ms. Perez brought the present action within that two-year period, so the Court is called upon to determine

---

applies to Doe's claims."  *Doe v. KIPP*, 373 F. Supp. at 11 & n.5, 14 & n.9.  In light of the fact that the Court does not interpret the Amendment Act to revive any of Ms. Perez's claims, it need not decide whether § 12-301(11) or a shorter limitations period would have applied.

whether this revival-period provision applies to individuals who had already filed a case under the previous statute of limitations.

KIPP argues that the "plain language" of the statute shows that it does not apply to claims that were previously adjudicated. *See* KIPP Mot. at 11–12. Specifically, KIPP argues that because the revival provision speaks of claims that "would be" time-barred under the prior provision rather than claims that "were" time-barred, it cannot apply to claims that were already adjudicated. *Id.* (quoting D.C. Law 22-311 § 5(a)(2)). That is a plausible reading of the statute, but the Court is not convinced that it is an unambiguous exclusion of claims that were adjudicated as time-barred. Rather, this phrasing simply seems not to contemplate the possibility that an individual like Ms. Perez might have tried, and failed, to assert a claim that was time-barred under the previous provision.

KIPP's more persuasive argument is grounded in constitutional avoidance.[7] "The so-called canon of constitutional avoidance is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009); *see also Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1235–36 (D.C. 2016), as amended (Dec. 13, 2018) (interpreting a D.C. statute to avoid constitutional concerns). KIPP persuasively argues that any interpretation of the Amendment Act to revive finally adjudicated claims such as this one would risk running afoul of the constitutional principles of separation of powers and due process, and the Court agrees.

---

[7] Defendants correctly note that Ms. Perez did not respond, in either of her opposition briefs, to Defendants' constitutional concerns. *See* KIPP Reply at 3; Capital City Reply at 3. Although the Court would accordingly be justified in treating those issues as conceded, it nevertheless considers them on the merits. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

"When retroactive legislation requires its own application in a case already finally adjudicated, it does no more and no less than reverse a determination once made, in a particular case." *Plaut*, 514 U.S. at 225 (internal quotation marks omitted). Such a result offends the bedrock principle of separation of powers, in which it is the exclusive province of the judicial branch "not merely to rule on cases, but to *decide* them, subject to review only by superior courts." *Id.* at 218–19 (emphasis in original). The situation in *Plaut* is instructive: the earlier case had been dismissed as time-barred under the controlling interpretation of the civil statute of limitations for that claim, but Congress disagreed with that interpretation and passed a law allowing plaintiffs whose cases had previously been dismissed under that interpretation to reinstate their claims. *Id.* at 214–15. The Supreme Court found that Congress's attempt was unconstitutional even though "the length and indeed even the very existence of a statute of limitations . . . is entirely subject to" legislative control and "can be extended . . . after the cause of the action arose." *Id.* at 228–29. Although *Plaut* was concerned with separation of powers in the federal government, the District of Columbia government has the same "tripartite structure" and "the same general principles" of separation of powers apply to the three branches of the D.C. government as well. *See Wilson v. Kelly*, 615 A.2d 229, 231–32 (D.C. 1992) ("Congress could reasonably intend that absent contrary provision drawn either expressly or by implication from the Self–Government Act or other statutes, its 'legislative' power as delegated to the Council would reflect its 'legislative' power vis-a-vis the other branches of government at the national level."); *see also* D.C. Code § 1-301.44(b) (1982) ("The Council recognizes the principle of separation of powers in the structure of the District of Columbia government.").

In an even more analogous situation involving separation of powers at the state level, the California legislature retroactively extended the statute of limitations for claims "against entities

that employed or supervised abusers." *Perez v. Roe 1*, 146 Cal. App. 4th 171, 175 (2006), as

modified (Jan. 26, 2007).  Acknowledging the limitations of separation of powers, the California

legislature specified that the retroactive effect did not apply to cases "litigated to finality on the

merits" before its effective date, but that "[t]ermination of a prior action on the basis of the

statute of limitations does not constitute a claim that has been litigated to finality on the merits."

*Id.* (citing Cal. Civ. Proc. Code § 340.1 (West 2006)).  The California Court of Appeals rejected

that attempt to undo otherwise final judgments "simply because a judgment on statute of

limitations grounds was not on the merits" as a violation of separation of powers principles.  *Id.*

at 189.

Likewise, KIPP raises concerns that interference with a final judgment would implicate

due process.  This argument is based on the longstanding recognition that "[i]t is not within the

power of a legislature to take away rights which have been once vested by a judgment."

*McCullough v. Virginia*, 172 U.S. 102, 123 (1898).  Allowing legislative interference with final

judgments, including those that rested on statute of limitations grounds, could "deprive the

defendant of a protected property right without due process of law."  *Luxford v. Dalkon Shield

Claimants Tr.*, 978 F. Supp. 221, 229 (D. Md. 1997).

Perhaps for these same concerns, "[t]here is no general public policy exception to the

operation of *res judicata*."  *Apotex, Inc.*, 393 F.3d at 219.  "Res judicata would ordinarily bar a

second suit for damages based on the same nucleus of facts at the core of the final judgment in

an earlier suit, notwithstanding a post judgment change in statutory law . . . ."  *Hegna v. Islamic

Revolutionary Guard Corps*, 908 F. Supp. 2d 116, 135 (D.D.C. 2012).  "[W]hile a statute may

define the preclusive effect to be given to pending or future cases, it may not do [so] for cases

that have achieved repose through a final judgment, and any party asserting such a statutory

construction as the basis for a subsequent action will fail." *Id.* (quoting 18 Moore's Federal Practice § 131.22[3]) (alterations in original).

In order to avoid the constitutional implications raised by Defendants, the Court determines that the Sexual Abuse Statute of Limitations Amendment Act of 2018 does not apply to claims such as Ms. Perez's, which were adjudicated and dismissed as time-barred under the previous statue of limitations.

\*     \*     \*

The Court is sympathetic to Ms. Perez's desire to achieve civil redress for her injuries and regrets the paradoxical outcome of this litigation—the unfortunate fact is that if Ms. Perez had filed her first case just a few months later, at least some of her claims would likely have benefitted from the Amendment Act.  But as the court in *Perez v. Roe 1* aptly put it:

> We recognize the apparent anomaly of allowing the revival of claims for plaintiffs who never bothered to file a complaint before the revival period took effect, while punishing those plaintiffs who displayed more diligence by at least trying to sue earlier, albeit after the then-existing limitations period had expired.  On the other hand, there are the defendants who years ago obtained favorable judgments based on the law as it then existed, likely incurring substantial attorney's fees in order to do so.  Relying on what appeared to be a final judgment, they might have felt free years later to discard favorable evidence and might as well have lost track of key witnesses.

146 Cal. App. 4th at 188.  These considerations apply here as well.  "The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981).  Precedent and sound policy both require the Court to "evenhandedly appl[y]" the doctrine of claim preclusion, *id.*, and find that Ms. Perez's second attempt at this litigation is barred by res judicata.[8]

---

[8] Because Ms. Perez's claims are barred by res judicata, the Court does not reach Capital City's alternative arguments regarding failure to state a claim, charter school immunity under

### C. The Court's Res Judicata Holding Extends to Defendant Coleman and the Unnamed Defendants

"As res judicata belongs to courts as well as to litigants, even a party's forfeiture of the right to assert it—which has not happened here because the defendant remains free to file an answer—does not destroy a court's ability to consider the issue *sua sponte*." *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997) (emphasis removed). *Sua sponte* consideration may be appropriate where "a court is on notice that it has previously decided the issue presented." *Arizona v. California*, 530 U.S. 392, 412, *supplemented*, 531 U.S. 1 (2000) (quotations omitted).

Both the present action and the *Doe* litigation named additional defendants who have not filed an answer or 12(b) motion in the current litigation: Coleman and ten "unidentified administrators, officials, employees, agents, or persons otherwise affiliated with" the named defendants. Compl. ¶¶ 5, 7. It is clear that the holding reached by the Court today necessarily extends to Defendant Coleman and any unnamed defendants as well. The Court has determined that claim preclusion bars Ms. Perez's entire action against all the preexisting litigants, and that the Amendment Act does not deprive this Court's prior judgment in *Doe v. KIPP* of its preclusive effect. Because Coleman and the unnamed defendants were parties to the prior action who are also entitled to the finality of that judgment, the Court "avoid[s] unnecessary judicial waste" by determining *sua sponte* that today's holding extends to them as well and dismissing

---

D.C. Code § 38-1802.04(c)(17), the availability of punitive damages, and the statute of limitations. *See* Capital City Mot. at 8–17.

Ms. Perez also makes a request in her opposition that she be allowed leave to amend "[i]f this Court finds that Plaintiff did not assert facts sufficient to support [her] claims." Pl.'s Capital City Opp'n at 8. Because the Court does not reach the sufficiency of Ms. Perez's factual allegations, it does not consider this request, which would not comply with the Local Rules in any event. *See* D.D.C. Loc. Civ. R. 7(i) (requiring a motion to amend to be accompanied by a proposed amended pleading).

this case in its entirety.  *Jenson v. Huerta*, 828 F. Supp. 2d 174, 179 (D.D.C. 2011) (quotations omitted).

## V.  CONCLUSION

For the foregoing reasons, Defendant KIPP DC's Motion to Dismiss (ECF No. 11) is **GRANTED** and Defendant Capital City Public Charter School's Motion to Dismiss (ECF No. 16) is **GRANTED**.  The Court *sua sponte* dismisses all claims against Defendant Coleman and the unnamed defendants.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 16, 2022                                    RUDOLPH CONTRERAS
                                                             United States District Judge