## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHANIQUE PEREZ,                          )
                                         )
          Plaintiff,                     )
                                         )      Case 1:21-cv-00929 (RC)
v.                                       )
                                         )
KIPP DC SUPPORTING CORP. et al.,         )
                                         )
          Defendants.                    )
_____ )

### PROTOCOL REGARDING ELECTRONICALLY STORED
### INFORMATION AND HARDCOPY DOCUMENTS

Plaintiff Shanique Perez, Defendant KIPP DC Supporting Corporation, and Defendant
Capital City Public Charter School (collectively, "the Parties") hereby agree to the following
Protocol for the production of electronically stored information ("ESI") and paper ("hardcopy")
documents ("Protocol").[1]  This Protocol governs the production of all documents, ESI and
hardcopy, by the Parties in this case.

### A.     GENERAL AGREEMENTS

1.     **General**

a.     This Protocol  governs the production of all ESI and hardcopy discovery in this
matter.

b.     The Parties agree that should a dispute arise out of the scope and implementation
of this Protocol, the Parties shall meet and confer in an attempt to resolve the dispute.  All disputes
arising out of this Protocol shall be resolved with reference to the agreements contained herein and
the Federal Rules of Civil Procedure.

---

[1] Defendant Alan Coleman has not yet appeared in this case.

     c.      Nothing in this Protocol shall limit a Party's right to object to any discovery request pursuant to any applicable rule or law, or to modify this Protocol through agreement of the Parties or through Court intervention.

     d.      Nothing in this ESI Protocol shall alleviate or otherwise eliminate a Party's duty to identify, gather, and produce responsive information. The fact that the Parties have agreed to this Protocol shall not be deemed an acknowledgement that any information excluded from discovery by this Order would or would not be discoverable in the absence of this Order. Nor shall this Protocol prevent any party from objecting to the production of Documents on any grounds available in the absence of this Order.

     e.      A Party producing documents or ESI will be referred to herein as the "Producing Party" and a Party receiving documents or ESI will be referred to herein as the "Receiving Party."

     f.      The Parties will meet and confer to resolve any discovery dispute before seeking Court intervention.

2.    **Definitions**

     a.      "Document" or "Documents" means Hardcopy Documents or ESI existing in any medium from which information can be obtained or translated into reasonably usable form. As used herein, the term "Document(s)" includes writings, drawings, graphs, charts, photographs, sound recordings, images, ESI, and any other date or data compilations stored in any medium from which information can be obtained and translated, if necessary, into a reasonably usable form.

     b.      "Electronically Stored Information" or "ESI," as used herein shall mean information that is stored in an electronic medium.

     c.      "Hardcopy Document" means Documents existing in paper form at the time of collection.

2

d.      "Native Format" means and refers to the associated file structure of ESI defined by the original creating application. A document is in its "native format" when in the associated file structure defined by the original creating application and may require the original application for viewing or searching. For example, the native format of an Excel workbook is a .xls or ·.xslx file.

e.      "Metadata" means the generic terms used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file. Metadata is embedded information in electronic documents that is generated when Documents are created or revised on a computer and is generally hidden from view in a printed copy of a document. Metadata may reflect such information as the author of a document, the date or dates on which the document was revised, tracked revisions to the document, and comments inserted in the margins. It may also reflect information necessary to access, understand, search, and display the contents of documents created in spreadsheet, database, and similar applications. Further, the Parties have an obligation to preserve metadata in electronic documents, subject to a standard of reasonableness.

f.      "Media" means an object or device, real or virtual, including but not limited to disc, tape, computer, or other device on which data are or were stored.

g.      "Optical Character Recognition" or "OCR" means a technology process that captures text from an image for the purpose of creating a parallel text file that can be associated with the image and searched in a database.

h.      "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. Commonly used algorithms include MD5 and SHA. Hash Value is similar to a digital fingerprint and represents the binary content of the data to assist in subsequently ensuring the data has not been modified.

3

i.     "Load files" means electronic files provided with a production set of documents and images used to load that production set into a Receiving Party's document review platform and correlate its data within that platform.

3.     **Documents Previously Produced**

To the extent that any of the Parties has already produced relevant documents or ESI in previous litigation that would be relevant herein and the Producing Party wishes to produce those documents in the same manner and format as previously produced, the Parties shall identify the affected documents and ESI and meet and confer to determine whether those documents or ESI shall be produced pursuant to this Protocol or in the same manner and format as previously produced.

4.     **Custodial and Non-Custodial Data Sources**

a.     **Custodial Data Sources.** The Parties shall meet and confer to identify a list of key custodians whose data sources will be searched for potentially responsive information pursuant to this Protocol. The key custodians shall be identified by name, dates of employment, department of employment, current or last-known title, and a brief description of current or last-known employment duties.  Any agreement regarding custodians or custodial data sources is without prejudice to any Party to later request or seek, in good faith, additional responsive materials either by agreement of the Parties or by Court intervention, including but not limited to revisions to the key custodians and/or searches not limited by custodian.  Nothing herein alleviates or otherwise eliminates any duty by either Party to disclose additional custodians who they discover may have responsive or relevant information. This agreement is also without prejudice to any Party's ability to later request, in good faith, that searches for emails not be limited by custodian.

4

b.    **Non-Custodial Data Sources.**    The Parties shall identify non-custodial data

sources from which they will produce relevant documents pursuant to the Protocol.

c.    **ESI Potentially Subject to Non-Production.**    Absent a showing of good cause the

following categories of ESI are presumed to be inaccessible and non-discoverable:

      i.    ESI deleted in the normal course of business (and not otherwise backed-up or preserved) before the time a preservation obligation came into effect;

      ii.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

      iii.    On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

      iv.    Except as set forth below, electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that copies of all such electronic data are routinely saved elsewhere (such as on a server, laptop, desktop computer, or 'cloud' storage);

      v.    De-NISTing - Software files included on the National Institute of Standards and Technology (NIST) Modern RDS (minimal) list obtained from https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download/current-rds;

      vi.    Server, system, network, or software application logs; and

      vii.    Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data are not ordinarily preserved as part of a laboratory report.

## B.    ELECTRONICALLY STORED INFORMATION

### 1.    Production in Reasonably Usable Form

a.    **Rolling Production.**    The Parties will make productions on a rolling basis so as to

provide each other with documents as expediently as reasonably possible.

b.    **Reasonably Usable Form.**    The Parties shall produce ESI in reasonably usable

form. Except as stated in Paragraphs B(2) and B(3) below or as agreed hereafter by the Parties,

such reasonably usable form shall be in .pdf format with a bates label, the Group IV Single Page

TIFF format, scanned at 300 DPI, with extracted or OCR text and associated metadata, as set out

in Attachment A, which is incorporated in full into this Protocol. If the Receiving Party for good

cause explained in the request seeks production in native format of specifically identified ESI

produced originally in TIFF-image form, the Producing Party shall respond reasonably and in good

faith to any such request.

      c.    **Redactions**.  The redaction of information from any Group IV TIFF image,

metadata field, or native file is governed by Federal Rule of Civil Procedure 26. Excel files should

be redacted using a native redaction tool to allow for native production of Excel files that bear

redactions.

      d.    **Color**.  No Party may request or seek to compel the production of documents in

color on a wholesale basis, although the Producing Party retains the option to produce documents

or ESI in color. Where an original document contains color, including where color may be

necessary to understand the context of the document, the Parties will honor reasonable requests

made in good faith from the Receiving Party for the production of a color image of the document,

such as requests for color versions of specific (identified by bates numbers) charts, bar graphs,

emails that require color to interpret meaning and context, and Word documents containing track

changes. Where a document is produced in color, images may be produced as single page, JPEG

images. Photographs (*e.g.*, .jpeg, .bmp), video files (*e.g.*, .wma, .mov, .mpg, .wmv, .avi, .asf) and

computer animation files (*e.g.*, .avi, .gif, .mpg, .gif, .mpg, .mpeg, .wmv) shall be produced in color.

2.      **Electronic Spreadsheets and Multimedia Files**

a.      Except as described above for redacted documents (Section B(1)(c)), electronic spreadsheets, such as Microsoft Excel files and CSV files, will be produced in native format with related searchable text, metadata, and bibliographic information.

b.      Except as described above for redacted documents (Section B(1)(c)), photographs (jpeg, gif), video and any other audio/visual multimedia files will be produced in native format.

c.      When producing documents in native format, the Producing Party shall insert into the production a "slip sheet" file for the document to be produced elsewhere in native format indicating the bates number of the native file and that the file is being produced natively or include a Group IV TIFF image of the native document in the sequence of the production indicating that the native file will be produced elsewhere in the production.

d.      Any produced native file will be named according to the first Bates number of the corresponding electronic document (*e.g.*, [Production Number Begin].xlsx).

e.      No Party may request or seek to compel the production of documents in native format on a wholesale basis. If a party would like a particular document produced in native format, including PowerPoint files, and this Protocol does not require the production of that document in its native format, the Parties will honor reasonable requests made in good faith, without the need to meet and confer.

3.      **Enterprise Databases, Database Management Systems, Structured Data**

To the extent any discoverable ESI is stored in any Party's enterprise database or database manage system (e.g., Oracle, SQL server, DB2), the Parties will meet and confer in good faith on the production of the discoverable ESI in an already existing and reasonably available report or in a reasonably usable form.

7

4.      **Additional Procedures for Native Format Files**

a.      Procedures for assigning production numbers and confidentiality information to files produced in native format are addressed in Attachment A, incorporated herein, at Paragraph A17.

b.      Any Party seeking to use, in any proceeding in this litigation, files produced in native format shall do so subject to the following:

1.      If the native file has been converted to TIFF-image or hardcopy, the slip sheet containing the original production number and any confidentiality designation shall be appended to the first page of the document prior to use.

2.      If the native file will be used in its native format, the Party seeking to use the native file shall associate therewith the slip sheet containing the original production number and any confidentiality designation.

5.      **Use of Search Terms and Filters**

a.      To contain costs associated with the identification of relevant ESI for review and production, the Parties shall meet and confer to discuss either the use of reasonable search terms, file types, and/or date ranges, or the use of advanced search and retrieval technologies, including predictive coding or other technology-assisted review. During such discussions, the Producing Party shall retain the sole right and responsibility to manage and control searches of its data files. The Parties agree that any electronic searches shall be accomplished using specialized e-discovery software (e.g., Relativity).

b.      In meeting and conferring on the use of search terms, the Producing Party shall first disclose its search terms to the Receiving Party, and if the Receiving Party believes in good faith that use of the disclosed search terms would result in deficiencies in the production, the Parties

will meet and confer on revisions to those search terms, including revisions provided by the Receiving Party.

    c.    The Parties agree that a "hit" on a search term or the fact that any electronic file has been identified in agreed-upon searches is not the sole factor in determining whether ESI is responsive to a Party's request for production. For the avoidance of any doubt, the Producing Party is not required to produce ESI containing a "hit" or search term if the document is not otherwise responsive, is protected from disclosure by applicable privilege or immunity, or governed by any applicable privacy laws or regulations.

    d.    Nothing in this section shall limit a Party's right to seek reasonable agreement from the other Parties or a Court ruling to modify previously agreed-upon search terms or procedures for advanced search and retrieval technologies.

6.        **Email Threading**

    a.    Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files. A most inclusive email in a thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of wholly included, prior-in-time, or lesser-included versions from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting. The Parties therefore agree that production of only the most inclusive e-mails is permissible, but not required.

    b.    Following production of the most inclusive emails, and for good cause, a Receiving Party may make reasonable requests, with respect to most-inclusive emails in a thread particularly identified in the requests, for prior or lesser-included emails within the

identified most inclusive email thread. Upon such request, the Producing Party shall cooperate reasonably in responding to any such requests.

## 7. **De-Duplication**

a. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate ESI exists in the files of multiple custodians, those persons shall be listed in the Custodian field identified in Paragraph A16(c) of Attachment A.

b. If the Producing Party makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update identified in Paragraph A16(c) of Attachment A.

MODIFICATION

The terms of this Protocol may be modified only by written agreement of counsel for all Parties (and subject to Court approval) or by further order of the Court. Further, a Party's agreement to this Protocol does not prejudice the Party's right to move the Court to lift or otherwise modify the Protocol for good cause.

**IT IS SO ORDERED**

Dated: October 31, 2023

Rudolph Contreras
United States District Judge

10

## ATTACHMENT A

A1.     **Image Files**. Files produced in *.tif format will be single page black and white *.tif

images at 300 DPI, Group IV compression. To the extent possible, original orientation will be

maintained (i.e., portrait-to-portrait and landscape-to-landscape). Each *.tif image will be

assigned a unique name matching the production number of the corresponding page. Such files

will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file

from splitting across folders. Files will not be split across folders and separate folders will not be

created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner

of all images and shall not obscure any portion of the original file. This number shall be a

unique, consistently formatted identifier that will:

                    a.     be consistent across the production;

                    b.     contains no special characters; and

                    c.     be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with an 8-digit number (e.g.,

ABC00000001). The number of digits in the numeric portion of the Bates number format should

not change in subsequent productions. Confidentiality designations, if any, will be endorsed on

the lower left corner of all images and shall not obscure any portion of the original file.

A2.     **File Text**. Except where ESI contains text that has been redacted under assertion of

privilege or other protection from disclosure, full extracted text will be provided in the format of

a single *.txt file for each file (i.e., not one *.txt file per *.tif image). Where ESI contains text

that has been redacted under assertion of privilege or other protection from disclosure, the

redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted

text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file

11

named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

A3.     **TIFFs of Redacted ESI.** TIFFs of redacted ESI shall convey the same information and image as the original document, to the extent possible and available, including all non-redacted elements and formatting which are visible in any view of the document in its native application (i.e., track changes).

A4.     **Redactions**. For ESI that is redacted, all metadata fields listed in A.17 will be provided in the .dat file and will include all non-redacted metadata. Metadata may be redacted as appropriate under assertion of privilege or other protection from disclosure or pursuant to this Protocol. Redacted documents shall be identified as such in the load file provided with the production as required in A.17. A Document's status as redacted does not relieve the Parties from providing the metadata required herein.

A.5     **Word Processing Files**. Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in the above format with tracked changes, comments, and hidden text showing.

A6.     **Presentation Files**. Presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), will be produced in *.tif image format with comments, hidden slides, speakers' notes, and similar data in such files.

A7.     **Spreadsheet Files**. Spreadsheet files, including Microsoft Excel files (*.xls, *.xlsx, and .csv), shall be produced in native format.

A8.     **Parent-Child Relationships**. Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-

child relationships will be identified in the data load file pursuant to paragraph A.16 below.

A9.     **Dynamic Fields**. Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A10.    **English Language**. To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A11.    **Embedded Objects**. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Objects with those identified file types shall not be extracted as separate files and produced as attachments to the file in which they were embedded. Following production of documents containing embedded objects, the Parties may meet and confer on reasonable requests to produce certain embedded objects on a file-by-file basis.

A12.    **Compressed Files**. Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A13.    **Encrypted or Corrupt Files**. The Producing Party will take reasonable steps, prior to production, to unencrypt or restore any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) or corrupt, and will produce relevant, non-privileged Documents that be reasonably unencrypted or restored. This provision does not require any forensic level tool or password cracking software to be utilized to decrypt a document.

A14.    **Fixed Notes**. For documents that contain fixed notes (*e.g.*, "post-it notes"), the pages

13

will be scanned or converted both with and without notes and those pages will be treated as part of the same document. If the burden on the Producing Party associated with production of documents with fixed notes becomes unreasonable, the Parties agree to meet and confer on the requirements of this subparagraph.

A15.  **Scanned Hardcopy Documents**

a.       In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized).

b.       For scanned images of hard copy documents, OCR should be performed on a Document level and provided in Document-level *.txt files named to match the production number of the first page of the Document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

c.       In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

A16.  **Production Numbering**. The Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A17. **Data and Image Load Files**.

a.      **Load Files Required.** Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

b.      **Load File Formats.**

    i.      Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat and ABC001_metadata.dat would be acceptable.

    ii.     Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

    iii.    Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

c.      **Fields to be Included in Data Load File.** For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client or work-product privilege, or otherwise prohibited from disclosure by law or regulation, including any applicable privacy regulation or law, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions. The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG | ABC00000001 | Yes | Yes | Beginning production number |

15

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| PRODCOUNTATT | 2 | Yes | Yes | The number of attachments associated with a family |
| CUSTODIAN | Smith, John | Yes | Yes | Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon |
| NATIVEFILE | Natives\001\001\ABC00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type of file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |
| LASTSAVEDBY | John Smith | No | Yes | Name of individual who last saved non-email file as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to UTC |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to UTC |
| READ_UNREAD | Unread | N/A | Yes | "Read" or "unread" status of an email message |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| IMPORTANCE | High Importance | N/A | Yes | Importance Designations given to email documents extracted from email message |
| HASHVALUE | e4d909c290d0fb1ca068ffaddf22cbd0 | No | Yes | MD5 or SHA-1 hash value |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| APPTDATE_START | 10/10/2005 5:00:00 pm | N/A | Yes | Calendar appointment start date and time |
| APPTDATE_END | 10/11/2005 2:00:00 pm | N/A | Yes | Calendar appointment end date and time |
| Redacted | Y | Yes | Yes | Indicates whether the document contains redactions using a Y or N value |
| Redaction Reason | ACP | Yes | Yes | Indicates the reason for the redaction (e.g., "AC", "WP", "AC/WP", "PHI") |
| Replacement | Y | Yes | Yes | Indicates that the document is being reproduced as a replacement to the original file produced |

d.      Production Spreadsheet. The Producing Party shall produce a native Excel file identifying the following information for each production: the volume number of the production, the bates range of the production, and a reasonably detailed description of the general categories of documents included in the production which shall include the identity of any custodians whose files are included in the production (e.g., regulatory file for product [x], promotional materials,

Jane Doe custodial records etc.). Each new production shall be accompanied by an updated version of that Excel spreadsheet that contains the older productions as well as the newest production.

A18.   **Files Produced in Native Format**. Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential" For each native file produced, the production will include a *.tif image slip-sheet indicating the production number of the native file and the confidentiality designation and stating, "File Provided Natively." To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise, the text contained on the slip-sheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A19.   **Production Media**. Unless otherwise agreed, documents and ESI will be produced via secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this Action, the identity of the Producing Party, and the following information: Volume name, production bates range(s), and date of delivery. The cover letter for each production shall identify the volume number of the production, the bates range of the production and the general categories of documents included in the production (e.g., Marketing Records, Jane Doe custodial records etc.).

A20.   **Encryption of Production Media**. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

19