**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHANIQUE PEREZ,                           :
                                          :
          Plaintiff,                      :    Civil Action No.:    21-929 (RC)
                                          :
     v.                                   :    Re Document Nos.:    29, 30, 37, 47, 48
                                          :                         54
                                          :
KIPP DC SUPPORTING CORP., et al.,         :
                                          :
          Defendants.                     :

<u>**MEMORANDUM OPINION**</u>

GRANTING IN PART AND DENYING IN PART KIPP DC'S MOTION TO DISMISS; GRANTING IN
PART AND DENYING IN PART CAPITAL CITY'S MOTION TO DISMISS; GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND

## I.  INTRODUCTION

Shanique Perez sues KIPP DC Supporting Corporation ("KIPP DC") and Capital City

Public Charter School ("Capital City") (collectively "Defendants").  Before the Court are KIPP

DC's motion to dismiss, Capital City's motion to dismiss, and Perez's motion for leave to amend

her complaint.  For the reasons explained below, the Court grants in part and denies in part KIPP

DC's motion to dismiss, grants in part and denies in part Capital City's motion to dismiss, and

grants in part and denies in part Perez's motion for leave to amend.

## II.  BACKGROUND

The Court assumes familiarity with the factual and procedural background of this case,

*see Perez v. KIPP DC Supporting Corp.*, 590 F. Supp. 3d 150 (D.D.C. 2022); *see also Perez v.*

*KIPP DC Supporting Corp.*, 70 F.4th 570 (D.C. Cir. 2023), and will recount here only the

background information necessary to understand the Court's disposition of the parties' respective

motions.  Shanique Perez seeks damages for sexual abuse she suffered as a minor student at the

hands of one of her teachers who was employed first by KIPP DC and later by Capital City.

Perez first sued Defendants in 2018.  This Court dismissed that suit because Perez filed her complaint after the District of Columbia's statutory limitations period had expired.  *See Doe v. KIPP DC Supporting Corp.* ("*Doe 2019*"), 373 F. Supp. 3d 1, 15 (D.D.C. 2019).

In 2019, four months after the Court dismissed Perez's case, the District of Columbia enacted the Sexual Abuse Statute of Limitations Amendment Act of 2018 ("the Act" or "the Revival Statute").  *See* Sexual Abuse Statute of Limitations Amendment Act of 2018, D.C. Law 22-311 ("D.C. Law § 22-311"), 66 D.C. Reg. 1398 (Feb. 1, 2019).  The Act amended § 12-301(11) of the D.C. Code so that civil actions "arising out of sexual abuse that occurred while the victim was less than 35 years of age" could be brought before "the date the victim attains the age of 40 years, or 5 years from when the victim knew, or reasonably should have known, of any act constituting sexual abuse, whichever is later."  D.C. Code § 12-301(11) (2024).  The Act also created a two-year revival period for "claims that would be time-barred under D.C. Official Code § 12-301 before the effective date of this act, but that would not be time-barred" under the Act. D.C. Code 22-311 § 5(a)(2).

Perez sued Defendants again in 2021, reasserting many of the same claims as in her first case.  *See* Compl., ECF No. 1.  In particular, Perez brought claims for: (1) sex discrimination under Title IX against KIPP DC; (2) negligent supervision and hiring/retention against KIPP DC and Capital City; (3) negligence against all Defendants; (4) premises liability against KIPP DC; (5) intentional infliction of emotional distress against all Defendants; and (6) negligent infliction of emotional distress against all Defendants.[1]  *See id.*  Perez alleged that beginning in 2004,

---

[1] Perez voluntarily dismissed all claims against Defendants Susan Schaeffler Ettinger, Wade Coleman (her abuser), and Roes (1-10)—the fictitious names of agents and employees of KIPP DC and Capital City not known to Perez.  *See* Notice Voluntary Dismissal Def. Susan Schaeffler Ettinger, ECF No. 5; Pl.'s Notice Voluntary Dismissal Without Prejudice Defs. Alan Wade Coleman and Roe (1-10), ECF No. 36.

when she was a fourteen-year-old student at KIPP DC, a public charter school in Washington, D.C., one of her teachers had sexual relations with her. *See* Compl. ¶ 13.  She further alleged that the abuse continued after that teacher left KIPP DC and was employed at Capital City in 2005, lasting until 2009. *See id.* ¶ 13.

This Court dismissed Perez's second complaint on the basis of res judicata. *See Perez*, 590 F. Supp. 3d at 159.  Perez appealed the dismissal of her second complaint. *See Perez*, 70 F.4th 570.  The D.C. Circuit reversed this Court's decision and held that Perez's second complaint could not be dismissed on the ground of res judicata because her first case was dismissed without prejudice. *Id.* at 571–72.  The Circuit also held that the constitutional doubt doctrine did not warrant interpreting the Act not to apply to Perez's claims because the constitutional doubt involved in Perez's case was not "exceedingly real." *Id.* at 572–73.  The D.C. Circuit then remanded the case to this Court to determine "the remaining issues," including "whether the old or the new D.C. statute of limitations applied to several of Perez's claims." *Id.* at 573.

Before the Court are KIPP DC's motion to dismiss, *see* Def. KIPP DC Mot. Dismiss ("KIPP DC Mot. Dismiss"), ECF No. 29, and Capital City's motion to dismiss, *see* Def. Capital City Mot. Dismiss ("Capital City Mot. Dismiss"), ECF No. 30.  Perez has filed responses in opposition to each of Defendants' motions, *see* Pl.'s Opp'n KIPP DC Mot. Dismiss at 9, ECF No. 39; Pl.'s Opp'n Capital City Mot. Dismiss, ECF No. 38.  KIPP DC and Capital City filed replies. *See* KIPP DC Reply Supp. Mot. Dismiss ("KIPP DC Reply"), ECF No. 42; Capital City Reply Supp. Mot. Dismiss, ECF No. 43.  Separately, Perez has filed a motion for leave to amend her complaint, *see* Pl.'s Mot. Leave Amend ("Mot. Leave Amend"), ECF No. 37, to which KIPP DC and Capital City filed responses in opposition, *see* KIPP DC Opp'n Mot. Leave Amend, ECF

No. 40; Capital City Opp'n Mot. Leave Amend, ECF No. 44, and in support of which Perez filed

replies, *see* Pl.'s Reply Supp. Mot. Leave Amend Resp. KIPP DC, ECF No. 45; Pl.'s Reply

Supp. Mot. Leave Amend Resp. Capital City, ECF No. 46.  The parties' motions are now ripe for

the Court's review.

## III.  LEGAL STANDARD

### A.  Motion to Dismiss

A complaint must contain a "short and plain statement of the claim," Fed. R. Civ. P.

8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon

which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  "A Rule

12(b)(6) motion to dismiss tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292

F.3d 235, 242 (D.C. Cir. 2002).  "In evaluating a Rule 12(b)(6) motion, the Court must construe

the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can

be derived from the facts alleged.'" *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023)

(citation omitted).  To survive a motion to dismiss, a complaint must contain sufficient factual

allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.*  "Factual allegations, although assumed to be true, must still 'be

enough to raise a right to relief above the speculative level.'" *Langeman*, 88 F.4th at 294

(citation omitted).  "But the Court need not accept inferences drawn by plaintiff if those

inferences are not supported by the facts set out in the complaint, nor must the court accept legal

conclusions cast as factual allegations." *Id.* (citation omitted).  Where a complaint pleads facts

that are "merely consistent with" a defendant's liability, it "stops short of the line between

possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 557 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Id.* at 678.

### B.  Motion for Leave to Amend

Under Federal Rule of Civil Procedure 15(a), "a party may amend its pleading once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a); *McGee v. District of Columbia*, 646 F. Supp. 2d 115, 118 (D.D.C. 2009).  Once a responsive pleading is served, however, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2); *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006).  In such circumstances, courts freely "give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2).  In deciding whether to grant a motion for leave to amend, courts balance several factors, including "undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In this Circuit, although the grant or denial of leave to amend is committed to a district court's discretion, denial of leave to amend constitutes an abuse of discretion unless the court gives sufficient reason. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  In the absence of the aforementioned factors, "the leave sought should, as the rules require, be 'freely given.'" *Id.*  Under Rule 15(a), the burden of persuasion falls on the non-movant to show why leave should not be granted. *Flaherty v. Pritzker*, 322 F.R.D. 44, 46 (D.D.C. 2017); *Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004).

## IV.  ANALYSIS

### A.  Motion to Dismiss

KIPP DC advances three arguments for the dismissal of Perez's complaint.  It argues that: (1) the Act does not apply to Perez's claims; (2) the Act as applied to KIPP DC is unconstitutional; and (3) the Act does not apply to Perez's Title IX claim.  *See generally* KIPP DC Mot. Dismiss.

Capital City also moves to dismiss Perez's complaint and adopts KIPP DC's arguments. *See* Def. Capital City's Mot. Dismiss.  In addition to joining KIPP DC's arguments, Capital City advances several additional arguments specific to its own circumstances: (1) Perez's negligence claims are barred by D.C. Code § 38-1802.04(c)(17); (2) Capital City did not owe Perez any duty; (3) Perez's claims for negligent supervision and hiring/retention contain insufficient facts and fail to allege proximate causation; (4) Perez's claim for intentional infliction of emotional distress contains insufficient facts and Capital City's alleged omissions and failures to act do not rise to the level of "extreme and outrageous conduct"; (5) Perez's claim for negligent infliction of emotional distress fails to allege a special relationship between Perez and Capital City; (6) Perez's claim for punitive damages fails as a matter of public policy; and (7) Perez's claims for punitive damages and attorney's fees contain insufficient facts.  *See generally* Capital City Mot. Dismiss.  The Court addresses Defendants' arguments in turn.

### 1.  The Act Applies to Perez's Claims

KIPP DC argues that the Act does not apply to Perez's claims because, it says, (1) the "plain language" of the statute does not apply to claims that were previously adjudicated as time-barred, *see* KIPP DC Mot. Dismiss at 7–9; *see also* KIPP DC Reply at 2–4, and (2) Perez's

claims do not "arise out of sexual abuse" as required by the statute, *see* KIPP DC Mot. Dismiss at 9–11; *see also* KIPP DC Reply at 4–6.  KIPP DC's arguments are unavailing.

KIPP DC argues that because the Act's revival provision applies only to claims that "would be time-barred" under the prior statute, it does not apply to claims like Perez's that "were" adjudicated as time-barred.  *See* KIPP DC Mot. Dismiss at 7–8.  The Court disagrees that the Act's use of the words "would be time-barred" renders it inapplicable to Perez's claims.  The Act states that "a claim for the recovery of damages that would be time-barred under D.C. Official Code § 12-301 before the effective date of this act, but that would not be time-barred under [the amended statute], is revived."  D.C. Law 22-311 § 5(a)(2).  KIPP DC correctly observes that courts rely on the "plain language" of the statute to determine its meaning, but the Court draws a different conclusion about the meaning to be derived from the Act's plain language.

The plain language of the Act requires the Court to consider the status of Perez's claims "before the effective date" of the Act.  *See* D.C. Law 22-311 § 5(a)(2).  If, before the effective date, Perez's claims "would be time-barred," the statutory limitations period is extended by two years from the effective date.  *Id.*  The Court must therefore determine the status of Perez's claims before D.C. enacted the Revival Statute.

Assessing Perez's claims on the day before the effective date, it would be consistent with ordinary use of the English language to say that Perez's claims "would be time-barred" because the then-existing statute of limitations period had passed.  *See Nichols v. United States*, 578 U.S. 104, 111 (2016) (explaining that statutes should be interpreted "in a manner consistent with ordinary English usage" (citation omitted)).  That statement would be true regardless of whether Perez's claims had previously been adjudicated.  Either way, she "would be time-barred" from

raising her claims.  Accordingly, the Court understands Perez's claims to fall within the Revival Statute because "before the effective date" of that statute, her claims would have been time barred.  The fact that her claims were also *actually* adjudicated as time barred merely confirms that those claims "would be" time-barred before the effective date of the Act.

The statute's use of the word "revived" suggests this interpretation as well.  A "revival statute" is "[a] law that provides for the renewal of actions, of wills, and of the legal effect of documents."  *Revival Statute*, Black's Law Dictionary (11th ed. 2019).  In line with the purpose of a revival statute, the Act is best interpreted to provide for the renewal of all actions that were previously time-barred.  The title of a statute is also a "permissible indicator[] of meaning," *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 727 (D.C. Cir. 2022), and here the title of the Act makes clear that the statute is intended to "eliminate" the statute of limitations for certain types of sexual abuse, D.C. Law 22-311.  A "textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored," *United States v. Nordean*, No. 21-cr-175, 2022 WL 17583799, at *12 (D.D.C. Dec. 11, 2022), and here the purpose of the statute is to "eliminate" the bar preventing victims of sexual abuse from filing suit, D.C. Law 22-311.  Accordingly, the Court holds that the Act applies to Perez's claims.

KIPP DC separately argues that the Act does not apply to Perez's claims because her claims do not "arise out of sexual abuse," as required by D.C. Code § 12-301(11).  *See* KIPP DC Mot. Dismiss at 9–11; *see* also KIPP DC Reply at 4–6; D.C. Code § 12-301(11).  In its view, Perez's claims arise not from sexual abuse perpetrated by KIPP DC but rather KIPP DC's alleged inactions, including failing to properly respond to or prevent sexual abuse.  *See* KIPP DC Mot. Dismiss at 9–10; KIPP DC Reply at 4–5.  KIPP DC argues that the phrase "arising out of" modifies the phrase "recovery of damages," creating a "remedial relationship between the

damages claimed and 'sexual abuse.'"  KIPP DC Mot. Dismiss at 10.  Because the damages that

Perez seeks do not remedy sexual abuse, KIPP DC argues, Perez's claims do not "arise out of

sexual abuse."  In response, Perez argues that her claims "directly stem from her abuse by

Coleman, including her claims against" Defendants.  Pl.'s Opp'n KIPP DC Mot. Dismiss at 9

(quoting *Doe 2019*, 373 F. Supp. 3d at 11 n.5).  Specifically, Perez contends that her allegations

"arose from [KIPP DC's] deliberate choice to ignore, not supervise, allow, and give the freedom

to Coleman to allow [her] sexual abuse . . . to occur."  *Id.* at 10.

Whether Perez's claims against Defendants "arises out of sexual abuse" is a closer

question.  As Perez highlights, the Court previously noted that "the plain language of § 12-

301(11) strongly suggests that the statutory provision applies to [all of Perez]'s claims,"

including her claims against Defendants, which all "directly stem from her abuse by Coleman."

*Doe 2019*, 373 F. Supp. 3d at 11 n.5.

By contrast, Defendants highlight that another judge in this district has held that a

plaintiff's claims do not arise out of sexual abuse merely because of a third-party's alleged

failure to respond to that plaintiff's complaints of sexual abuse in the correct manner.  *See Doe v.*

*Howard Univ.*, 594 F. Supp. 3d 52, 62 (D.D.C. 2022).  In *Howard University*, Judge Nichols

explained that "[t]o 'arise,' in its legal sense, is 'to originate; to stem (from),' as in 'a federal

claim arising under the U.S. Constitution.'"  *Id.* (citing *Arise*, Black's Law Dictionary (11th ed.

2019)).  Judge Nichols then concluded that the "origination of [the plaintiff's] claim [wa]s not

her rape, but the alleged failures of [the university] in responding to her complaint."  *Id.*  Judge

Nichols further observed that the phrase "'arising from sexual abuse,' as used in § 12-301(11),

modifies [the phrase] 'recovery of damages',"  meaning that the statute's text "creates some

remedial relationship between the damages claimed and 'sexual abuse'"—and that the plaintiff's damages would not remedy sexual abuse but rather the university's wrongful conduct. *Id.*

Although Judge Nichols's interpretation is plausible, the Court believes that § 12-301(11) is best interpreted more broadly. As Judge Nichols observed in *Howard University*, the term "arise" means "[t]o originate; to stem (from)," but it also means "[t]o result (from)" as in "litigation routinely arises from such accidents." *Arise*, Black's Law Dictionary (11th ed. 2019). Consistent with the plain language of § 12-301(11), Perez's suit against Defendants "result[ed]" from sexual abuse because she alleges that Defendants facilitated and contributed to her sexual abuse. *See* Compl. ¶¶ 79–120. In particular, Perez alleges that Defendants failed to "investigate, correct, and/or otherwise address the openly pervasive environment of sexual harassment and sexual objectification of its female students, by its male teachers," "ignore[ed] and/or otherwise fail[ed] to properly address complaints about instances of sexual assaults occurring on the KIPP DC campus and by and between KIPP employees and students," "fail[ed] to promptly report Plaintiff's sexual assaults to the authorities," and "fail[ed] to take any action to prevent retaliation against Plaintiff after her assaults were reported." *Id.* ¶ 82. She also alleges that Defendants created an environment that facilitated her abuse because KIPP DC "fail[ed] to heed warnings regarding [her assailant's] conduct," and "fail[ed] to supervise" its staff, and "Capital City Charter Schools failed to appropriately investigate, screen, monitor, and respond to complaints of sexual assault and rape it had actual or constructive knowledge of." *Id.* ¶¶ 82, 86. Even if the Court's analysis were informed by the "originate" or "stem" definition of arise, it

nevertheless appears to the Court that Perez's claims against Defendants originate and stem from Defendants' actions respecting her sexual abuse.[2]

D.C. Circuit and D.C. Court of Appeals precedents in other contexts support this interpretation of the phrase "arising out of."  In the employment context, the D.C. Court of Appeals has explained that injuries "aris[e] out of . . . the course of employment"—even when the injuries are not distinctly associated with that employee's job—when the employee's injuries "would not have happened but for the fact that conditions and obligations of the employment placed [them] in a position where [they were] injured." *United Parcel Serv. v. Dep't of Emp. Servs.*, 297 A.3d 1085, 1090 (D.C. 2023) (citation omitted); *see also Staggs v. Smith & Wesson*, No. 21-cv-2535, 2022 WL 444110, at *3 (D.D.C. Feb. 14, 2022) (explaining in employment context that injury arose out of employment where "injury would not have happened but for" conditions of employment).  The same reasoning applies here.  Even though Defendants did not sexually abuse Perez themselves, the complaint alleges that Perez would not have been sexually abused if not for the conditions in which Defendants placed her.  She also alleges that her sexual abuse would not have continued had Defendants taken the appropriate steps to stop it.  In that sense, her claims against Defendants "stem" or "result" from her sexual abuse.

In a different context, the D.C. Circuit has also explained that "'arise' out of means 'to originate from a specified source,'" which "generally requires 'a causal connection'." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1260 (D.C. Cir. 2020).  Here, there is a "causal

---

[2] The Court also agrees with Perez that her case is factually distinguishable from *Howard University*.  *Howard University* involved a single instance of sexual abuse that took place off school grounds.  By contrast, Perez's claims are based on repeated conduct that occurred over a span of years, began at the school, and, as alleged in her complaint, would not have occurred absent Defendants' conduct.  These factual differences are significant because they demonstrate that Defendants' conduct here was tied in a far more direct way to sexual abuse than the conduct of the defendant in *Howard University*.

connection" between Defendants' failures in properly supervising and investigating Coleman and the continuation of Perez's abuse.  Because her claims against Defendants are causally related to and "depend on," *id.* at 1261, her sexual abuse, they can be said to "aris[e] out of sexual abuse," § 12-301(11).

Moreover, Defendants' contention that § 12-301(11) contemplates a remedial relationship between the damages claim and the sexual abuse does not alter this interpretation.  This is so because there is, in fact, a relationship between the remedies Perez seeks from Defendants and sexual abuse: namely, the damages Perez seeks would compensate her for Defendant's alleged actions facilitating that sexual abuse.  Accordingly, the Court holds that Perez's claims against Defendants fall within D.C. Code § 12-301(11).

2.   The Act is Constitutional as Applied to Defendants

Defendants argue that even if the Act applies to Perez's claims, its application to them would (1) violate the Constitution's separation of powers principle and (2) violate the Fifth Amendment's Due Process Clause.  *See* KIPP DC Mot. Dismiss at 12–23.  The Court addresses each argument in turn.

a.  *Separation of Powers*

Defendants contend that even if the language of the Act applies to Perez's claims, the Act is nonetheless unconstitutional as applied to Defendants.  *See id.* at 16.  This is so, they say, because the Revival Statute violates the separation of powers by legislatively revising this Court's final judgment in *Doe 2019*.  *Id.* at 16–20.  In response, Perez argues that the Act is not unconstitutional as applied to Defendants because Perez's earlier suit was dismissed without prejudice.  *See* Pl.'s Opp'n KIPP DC at 13–16.  The Court holds that the Act does not violate the separation of powers principle for two reasons.

First, the D.C. Circuit has clarified that legislation violates the separation of powers only when that legislation "prescribes what the law was at an earlier time, when the act whose effect is controlled by the legislation occurred" and thereby revises a court's judgment. *See Friends of Animals v. Jewell*, 824 F.3d 1033, 1043 (D.C. Cir. 2016) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 225 (1995)). Consequently, the *Friends of Animals* court explained that the Constitution does not prohibit the legislature from enacting a statute to govern *new* cases. *Id.*; *see also Plaut*, 514 U.S. at 234 (explaining that the legislature may create rules that govern future proceedings). As a technical matter, the instant proceeding is a new case; Perez has not sought to reopen or "revise" the judgment in *Doe 2019* but has instead filed a new suit against Defendants. As a formal matter, the application of the Act, therefore, is not a reopening or revision of the Court's prior judgment in *Doe 2019* but rather an application of the currently existing statute of limitations to Perez's claims in the instant, distinct, case against Defendants.

This case is distinguishable from the cases that Defendants cite because, unlike in those cases where legislatures attempted to reopen a judgment, reopening or revising the judgment in *Doe 2019* is not an issue here. This is so because the Court dismissed *Doe 2019* "without prejudice"—meaning that the Court authorized Perez to file a new suit based on her earlier claims. *See Dismissal Without Prejudice*, Black's Law Dictionary (11th ed. 2019) ("A dismissal that does not bar the plaintiff from refiling the lawsuit within the limitations period."); 18 Moore's Federal Practice - Civil § 131.30 (2024) ("[A]ny . . . dismissal that is expressly 'without prejudice,' ordinarily does not preclude a subsequent action on the same claim."); *id.* § 131.54 ("A dismissal of an action *without prejudice* is an indication that the judgment is not on the merits and will therefore have no preclusive effect"); *Perez*, 70 F.4th at 572 (holding that a without-prejudice dismissal is not an adjudication on the merits and has no res judicata effect).

And Perez has done just that; she has filed a new case based on current law.  Because the Act, as applied in this new case, does not "revise" the Court's earlier judgment, it does not violate the separation of powers.

Second, as explained by the D.C. Circuit, "only legislation setting aside or reopening judgments of federal courts rendered '*with prejudice*'" violates "the separation of powers" under the Supreme Court's *Plaut* precedent.  *Perez*, 70 F.4th at 573 (emphasis added).  In Perez's appeal, the D.C. Circuit held that "*Plaut* is inapposite" where a federal court's judgment was rendered "without prejudice" because a without prejudice dismissal permits the losing party to file a new lawsuit.  *Id.*  This means that, even if the legislation were to reopen or revise the judgment in *Doe 2019*, it would not violate the separation of powers because the earlier suit was dismissed "without prejudice."  *See Doe 2019*, 373 F. Supp. 3d at 15.  Accordingly, *Plaut*'s admonition that the legislature may not interfere with a federal court's judgment does not apply to this Court's earlier judgment in *Doe 2019*.  The Court concludes that the Act does not violate the separation of powers as applied in this case.

### b.  Due Process

Defendants separately argue that even if the Act does not violate the separation of powers, it nonetheless violates their due process rights.  *See* KIPP DC Mot. Dismiss at 13–16.  Defendants contend that the final judgment entered in their favor in *Doe 2019* constitutes a vested property right protected by the Due Process Clause and that, therefore, D.C. cannot deprive them of that right without due process of law.  *See id.*  In response, Perez argues that there was no final judgment in her earlier case and that, therefore, Defendants have no vested right.  *See* Pl.'s Opp'n KIPP DC at 13–14.

For reasons similar to those discussed in the Court's separation of powers analysis, the Court holds that the Act does not violate Defendants' due process rights. The D.C. Circuit has held that vested property rights are protected by the Due Process Clause. *See Daylo v. Adm'r of Veterans' Affs.*, 501 F.2d 811, 816 (D.C. Cir. 1974). And some courts have held that parties have a vested right in a final judgment. *See, e.g.*, *Capello v. Dist. of Columbia Bd. Of Educ.*, 669 F. Supp. 14 (D.D.C. 1987). But even assuming that Defendants have a vested right in this Court's judgment in *Doe 2019*, the Act does not infringe or otherwise undermine Defendant's rights to that judgment.

This is so because—as applied in this case—the Act does not revise or reverse the Court's earlier judgment. The Court's earlier judgment dismissed without prejudice Perez's case as time barred based on the then-applicable statute of limitations. *See Doe 2019*, 373 F. Supp. 3d at 15. The fact that the Court's *Doe 2019* dismissal was rendered without prejudice means that the judgment specifically authorized Perez to file another suit based on the same claims. *See Perez*, 70 F.4th at 573; 18 Moore's Federal Practice - Civil § 131.30 (2024) ("[A]ny . . . dismissal that is expressly 'without prejudice,' ordinarily does not preclude a subsequent action on the same claim."). To the extent that Defendants have a vested property right in the Court's earlier judgment, that right is limited by and subject to Perez's right to file a new suit based on the same claims. Therefore, it is not the Act that permits Perez to file a new suit—and potentially obtain a judgment contrary to *Doe 2019*—but rather the Court's earlier judgment itself that permits it. And the current suit is distinct from *Doe 2019*, in which Defendants argue they have a vested right. Because the instant case is a new suit rather than a reopening of the judgment in *Doe 2019*, the Court's earlier judgment—which reflected the state of earlier law—is not revised by the Act, and the judgment in *Doe 2019* remains, as a formal matter, unaffected by a decision in

the instant suit.  *See Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1337 (11th Cir. 2023)

("[W]hen a plaintiff files a second complaint after his first is dismissed, the second complaint

commences a new action.  That new action is what must satisfy the limitations period.")*; c.f. City

of S. Pasadena v. Mineta*, 284 F.3d 1154, 1157 (9th Cir. 2002) (explaining in context of

voluntary dismissal without prejudice that "any future lawsuit based on the same claim [is] an

entirely new lawsuit unrelated to the earlier (dismissed) action").  In other words, the judgments

in this case and the judgment in *Doe 2019* are independent of each other.

Accordingly, the Act, which merely changes the statutory limitations period for certain of

Perez's claims, does not deprive Defendants of any property right without due process.

Defendants' argument that the legislature may not deprive them of a vested property right is

therefore inapposite here, where Defendants' vested property right—assuming they have one—is

limited by the Court's earlier judgment and is, as a formal matter, unaffected by the Act's

application to this separate case.

Furthermore, even if the Act were to hypothetically change the Court's earlier judgment

in *Doe 2019*, Defendant's argument that the Act violates their due process rights would still be

unavailing.  In support of their argument, Defendants rely on the D.C. Circuit's opinion in *de

Rodulfa v. United States*, in which the Circuit explained that when a party's rights have "vested

by a judgment," the legislature cannot take away those rights.  461 F.2d 1240, 1252 (D.C. Cir.

1972) (quoting *McCullough v. Com. of Virginia*, 172 U.S. 102, 123 (1898)).  That section of the

*de Rodulfa* decision does not, however, speak to a party's rights under the Due Process Clause;

rather that section of *de Rodulfa*—which discusses the Supreme Court's opinion in *McCullough

v. Com. of Virginia*—is best read to reiterate the separation of powers principle that the

legislature may not interfere with court judgments.  A later section of the *de Rodulfa* opinion that

*does* explicitly discuss the plaintiff's due process rights ultimately concludes that the plaintiff's due process rights were not violated. *Compare id.* at 1252 (discussing limitations on legislature's power to revise judgments) *with id.* at 1256–57 (discussing whether plaintiff's due process rights were violated). And as explained in Part IV.A.2.a above, the separation of powers principle is not violated here.

That said, the vested rights doctrine often implicates both due process and the separation of powers because "once rights are fixed by judgment, they are a form of property over which the legislature *has no greater power than it has over any other form of property*." *Luxford v. Dalkon Shield Claimants Tr.*, 978 F. Supp. 221, 227 (D. Md. 1997) (emphasis added); *see Daylo*, 501 F.2d at 816 (recognizing that parties have a due process interest in their vested rights). But "the fact that a [due process right] cannot be inhibited without due process of law does not mean that it can under no circumstances be inhibited." *Zemel v. Rusk*, 381 U.S. 1, 14 (1965).

"The Supreme Court has held that the Due Process Clause protects individuals against two types of government action." *DOE v. Rogers*, 139 F. Supp. 3d 120, 154 (D.D.C. 2015) (cleaned up). The first protection, called "substantive due process," "prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Id.* (cleaned up); *see also Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984) (retroactive legislation satisfies substantive due process "simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose"). The second protection, called "procedural due process," requires that any deprivation of life, liberty, or property be "implemented in a fair manner." *Id.* (citation omitted). Defendants' argument here appears to be that the Act would deprive them of their property in the *Doe 2019* final judgment in an unfair manner and therefore requires a procedural due process

analysis.  *See* KIPP DC Mot. Dismiss at 13–16 (citing *Aref v. Lynch*, 833 F.3d 242, 252 (D.C. Cir. 2016)).

Assuming that Defendants have a vested property right in the Court's earlier judgment in their favor, the Court must ask whether Defendants were afforded the process they are due.  *See Zemel*, 381 U.S. at 14 ("[T]he fact that a [right] cannot be inhibited without due process of law does not mean that it can under no circumstances be inhibited.").  The answer is yes.

When a legislature passes a general statute that affects a large group, individuals within that group do not necessarily have a right to individualized notice and hearings—even if the legislation affects their property to the "point of ruin."  *See Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283–84 (1984) (citation omitted).  Rather, "[t]heir  rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule."  *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 439 U.S. 96, 108 (1978) (quoting *Bi–Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)).  In other words, the due process rights of the individuals subject to general laws are protected by the public's "opportunity to contest the legislative determination through the processes of representative government."  *Dibble v. Quinn*, 793 F.3d 803, 809 (7th Cir. 2015) (citing *Bi–Metallic*, 239 U.S. at 445); *75 Acres, LLC v. Miami-Dade Cnty., Fla.*, 338 F.3d 1288, 1294 (11th Cir. 2003) ("When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process." (citation omitted)); *Onyx Props. LLC v. Bd. of Cnty. Commissioners of Elbert Cnty.*, 838 F.3d 1039, 1044–45 (10th Cir. 2016) ("[T]he Supreme Court long ago established that the federal Constitution does not require a hearing on the adoption of legislation.").

The Act at issue here is general in nature and covers a large group of individuals beyond Defendants in this case.  It extends the limitations period for all claims, both past and future, as well as previously adjudicated (without prejudice) and unadjudicated.  It is therefore precisely the type of statute for which the legislative process is adequate process.  *C.f. Chase Sec. Corp*, 325 U.S. 304, 311–12 (1945) ("[W]here lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar."); *id.* at 314, 316 (explaining that statutes of limitation provide protection "while [they] exist[], but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control" and that "it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment."); *Landgraf v. USI Film Prod.*, 511 U.S. 244, 266–67 (1994) ("The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. . . . [and] [a]bsent a violation of [a] specific [constitutional] provision[], the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope."); *Wesley Theological Seminary of the United Methodist Church v. U.S. Gypsum Co.*, 876 F.2d 119, 122–23 (D.C. Cir. 1989) (holding that retroactive amendment of statute of repose did not violate due process).  And, after Defendants had an opportunity to argue otherwise here, the Court has concluded that the Act applies to Perez's claims against Defendants.  Accordingly, Defendants have been afforded all the process they are due under the Due Process Clause.

### 3.  The Act Does Not Apply to Perez's Title IX Claim

The parties disagree over which statute of limitations period applies to Perez's Title IX claim against KIPP DC.  "Title IX does not contain an express private right of action; therefore, it contains no defined statute of limitations for a claim such as the one brought by Plaintiff."  *Smith v. Howard Univ.*, 605 F. Supp. 3d 103, 106 (D.D.C. 2022).  "The Supreme Court, however, has recognized an implied private right of action to enforce Title IX," and to "identify the applicable limitations period for an implied private right of action, courts must borrow the most suitable statute or other rule of timeliness from . . . the most closely analogous statute of limitations under state law."  *Id.* (quotation marks and citation omitted).  Consequently, the Court must determine which of D.C.'s statute of limitations periods is analogous to and applies to Perez's Title IX claim.

KIPP DC argues that the Act's longer limitations period does not apply to Perez's Title IX claim because her Title IX claim is subject to the limitations period set forth in D.C. Code § 12-301(8) rather than § 12-301(11).  *See* KIPP DC Mot. Dismiss at 23–25; *see also* KIPP DC Reply at 12–13.  KIPP DC further argues that, even assuming the claim is subject to § 12-301(11), the Act does not revive Perez's Title IX claim because it is a tort-specific statute.  *See* KIPP DC Mot. Dismiss at 26–27; *see also* KIPP DC Reply at 13–15.  In response, Perez argues that her Title IX claim is subject to § 12-301(11).  *See* Pl.'s Opp'n KIPP DC at 17.  She contends that claims under § 12-301(11) are "most analogous" to Title IX claims and that § 12-301(8), by its plain language, does not apply because § 12-301(8) provides a limitation period of 3 years "for which a limitation is not otherwise specifically prescribed" and a limitation is specifically prescribed for claims arising from sexual abuse in § 12-301(11).  *See id.*  Perez further argues that the "continuing violation" doctrine applies to her Title IX claim.  *See id.* at 18.

The Court concludes that § 12-301(11)'s longer limitations period does not apply to Perez's Title IX claim.  Although the D.C. Circuit "has not definitively answered which limitations period applies to Title IX claims," judges in this district have concluded that either "the District of Columbia's three-year, catch-all limitations period for personal injury claims under D.C. Code § 12-301(8) governs claims brought under Title IX" or that "the DCHRA's one-year limitations period applies to Title IX claims."  *Smith*, 605 F. Supp. 3d at 106–07.  The Court need not decide which of these positions is correct because either way, § 12-301(11) does not apply to Perez's Title IX claim.

Perez's argument that the longer § 12-301(11) limitations period should apply as the most analogous is unpersuasive.  This is so because the Supreme Court has explained in the section 1983 context that "where a State has one or more statutes of limitations" for different enumerated torts "the residual or general personal injury statute of limitations applies."  *Owens v. Okure*, 488 U.S. 235, 236 (1989); *see also Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998) (rejecting argument that D.C.'s one-year tort specific statute of limitation, rather than D.C.'s three-year residual statute of limitations, applied to section 1981 claim and reiterating that "in states with multiple statutes of limitations, claims [under sections 1981 and 1983] are governed by the residual or general personal injury statute of limitations (like section 12–301(8))").  Here, D.C. Code § 12-301 offers multiple different limitations periods for different torts and other causes of action.  This Court agrees with the court's opinion in *Smith* which held that "[t]he court can discern no material distinction between section 1981 and Title IX for purposes of the 'most closely analogous' state law inquiry."  605 F. Supp. 3d at 108.  Supreme Court and D.C. Circuit precedents therefore instruct that the residual § 12-301(8) statute of limitation applies, rather than the more specific § 12-301(11) statute of limitations.  Moreover, Title IX covers conduct other than sexual abuse—

such as sexual discrimination—and it would be incongruous to apply the limitations period in § 12–301(11)—which applies only to claims "arising out of sexual abuse"—to some applications of Title IX, but not to others.  Accordingly, Perez's Title IX claim falls outside of the Act's limitations period and revival provision.

Perez separately argues that her Title IX claim is still within the limitation period because KIPP DC committed a continuing violation of Title IX.  *See* Pl.'s Opp'n KIPP DC at 18.  This argument fails as well because, even assuming that a continuing violation occurred all the way up until Coleman's arrest in 2016, more than three years passed between Coleman's arrest and Perez's filing of the instant suit in 2021.  *See Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d 9, 43 (D.D.C. 2018) (explaining that to bring suit based on a continuing violation theory the plaintiff must "initiate[] proceedings within the specified time following at least one act in the series" of acts that make up the continuing violation).  In particular, Perez's complaint does not allege that any actions taken after Coleman's arrest affected Perez and so Coleman's arrest is the latest possible terminus of Defendants' continuing violation.  Because no action occurred within the limitations period, even if there were a continuing violation here Perez's claim was still filed too late.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002) (explaining that for the continuing violation doctrine to apply, a plaintiff must identify an "act that is part of the hostile . . . environment" within the limitations period).

The Court therefore concludes that Perez's Title IX claim against KIPP DC was untimely filed.  Accordingly, the Court grants KIPP DC's motion to dismiss with respect to Perez's Title IX claim.

**B.  Capital City's Motion to Dismiss and Perez's Motion for Leave to Amend**

Capital City separately moves to dismiss Perez's complaint as it relates to Capital City. *See generally* Capital City Mot. Dismiss.  Capital City adopts KIPP DC's arguments but also raises several additional arguments based on its particular circumstances.  Specifically, Capital City argues that (1) Perez's negligence claims are barred by D.C. Code § 38-1802.04(c)(17); (2) Capital City did not owe Perez any duty; (3) Perez's claims for negligent supervision and hiring/retention contain insufficient facts and fail to allege proximate causation; (4) Perez's claim for intentional infliction of emotional distress contains insufficient facts and Capital City's alleged omissions and failures to act do not rise to the level of "extreme and outrageous conduct"; (5) Perez's claim for negligent infliction of emotional distress fails to allege a special relationship between Perez and Capital City; (6) Perez's claim for punitive damages fails as a matter of public policy; and (7) Perez's claims for punitive damages and attorney's fees contain insufficient facts.  *Id.*

Perez filed a response in opposition to Capital City's motion, *see* Pl.'s Opp'n Capital City, but she also filed a motion for leave to amend her complaint, *see* Mot. Leave Amend. Perez's motion for leave to amend includes a proposed first amended complaint, which alleges additional facts that appear to directly address Capital City's motion to dismiss arguments.  *See generally* Proposed First Amend. Compl., ECF No. 37-1.  Because granting Perez's motion for leave to amend may moot Capital City's motion to dismiss, *see Gray v. D.C. Pub. Sch.*, 688 F. Supp. 2d 1, 6 (D.D.C. 2010) ("When a plaintiff amends her complaint, it renders a motion to dismiss that complaint moot."), the Court discusses the motion for leave to amend before discussing Capital City's motion to dismiss.

As explained above, leave to amend is usually freely granted.  However, courts must

"consider the following factors: (1) undue delay; (2) the movant's bad faith or dilatory motive;

(3) repeated failures to cure deficiencies by amendments previously allowed; (4) undue prejudice

to the opposing party by virtue of permitting an amendment; and (5) futility of the amendment."

*Norris v. Salazar*, 746 F. Supp. 2d 1, 3 (D.D.C. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182

(1962)).

To begin with, the Court finds that an amended complaint would not cause undue delay.

This case was remanded from the Circuit less than a year ago and discovery has not yet been

completed.  "[G]iven the relatively early stage" in the proceedings, amendment to the complaint

would not cause undue delay.  *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, No. 19-cv-3629

(RC), 2021 WL 1198047, at *7 (D.D.C. Mar. 30, 2021); *see In re APA Assessment Fee Litig.*,

766 F.3d 39, 56–57 (D.C. Cir. 2014) (district court may not deny a motion for leave to amend

complaint "based solely on timeliness unless the defendants can [also] show undue prejudice");

*McComb v. Ross*, 202 F. Supp. 3d 11, 20 (D.D.C. 2016) (rejecting undue delay argument where

"discovery in th[e] case [had] not yet closed, and the [c]ourt ha[d] yet to set a trial date").

Additionally, there is no indication that Perez seeks to amend her complaint in bad faith or for a

dilatory motive, and this is the first amendment to her complaint.

The question then becomes whether amendment would cause undue prejudice to the

opposing parties.  "Undue prejudice is not mere harm to the non-movant but a denial of the

opportunity to present facts or evidence which would have been offered had the amendment been

timely."  *Does I through III v. District of Columbia*, 815 F. Supp. 2d 208, 215 (D.D.C. 2011)

(quoting *Dove v. Wash. Metro. Area Transit Auth.*, 221 F.R.D. 246, 248 (D.D.C. 2004));

*Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) ("The most important factor the Court must

consider when deciding whether to grant a motion for leave to amend is the possibility of prejudice to the opposing party."). "Where 'the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.'" *Djourabchi*, 240 F.R.D. at 13 (quoting Wright, Miller & Kane, Federal Practice and Procedure § 1487).

Here, amendment to the complaint would not alter Perez's theory of the case or require significant new preparation on the part of Defendants. Rather, Perez's proposed first amended complaint merely adds details to the factual allegations contained in her initial complaint. Even if Defendants must spend some additional resources investigating the details in Perez's new complaint, "an amendment is not automatically deemed prejudicial if it causes the non-movant to expend additional resources. Any amendment will require some expenditure of resources on the part of the non-moving party. 'Inconvenience or additional cost to a defendant is not necessarily undue prejudice.'" *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013) (quoting *City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 6–7 (D.D.C. 2008)); *see also Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999) ("Where an amendment would do no more than clarify legal theories or make technical corrections, we have consistently held that delay, without a showing of prejudice, is not a sufficient ground for denying the motion."). "Where the proponent of the amendment establishes that the additional claim would not 'unduly increase discovery or delay the trial, and when the opponent could not claim surprise,' . . . the amendment should be allowed." *Djourabchi*, 240 F.R.D. at 13 (quoting Wright, Miller & Kane, *Federal Practice and Procedure* § 1487). There is no surprise here

given that the allegations in the proposed amended complaint merely add additional detail to support the allegations in the initial complaint.

Lastly, the Court considers futility.  A motion for leave to amend may be denied as futile if the complaint as amended could not withstand a motion to dismiss.  *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  "Futility alone is a sufficient basis to deny leave to amend."  *Gavin v. Dep't of the Air Force*, 314 F. Supp. 3d 297, 305 (D.D.C. 2018).  The Court concludes that amendment would not be futile with respect to some but not all of Perez's claims.

As explained above, the Court concluded that aside from Perez's Title IX claim Perez's initial complaint could withstand KIPP DC's motion to dismiss.  Perez's proposed amended complaint simply provides more detailed allegations.  *See* Proposed First Amended Compl.  For example, the proposed complaint contains factual allegations about Coleman's conduct at the KIPP DC school such as physically touching Perez and bringing her gifts.  *Id.* ¶¶ 29, 32, 43.  It also provides additional factual allegations about KIPP DC's knowledge of Coleman's inappropriate conduct with Perez.  *Id.* ¶¶ 34, 40.  Having already concluded that Perez's initial complaint in large part survives KIPP DC's motion to dismiss, the Court concludes that the motion to amend the complaint is not futile—except for Perez's Title IX claim.

Amendment *would* be futile with respect to Perez's Title IX claim.  As explained above, Perez's Title IX claim fails because Perez filed that claim long after the statutory limitations period expired.  Perez's proposed amended complaint—read in the light most favorable to her— contains no new allegations which could change the fact that her Title IX claim was untimely filed.  Nor does it appear to the Court that Perez could allege any facts changing that outcome.  Consequently, because amendment of the complaint is futile with respect to Perez's Title IX claim, the Court denies leave to amend the complaint in that respect.

Assessing futility with respect to the claims against Capital City, the Court concludes that amendment to Perez's complaint does not appear futile with respect to Perez's claims that are based on gross negligence or intentional infliction of emotional distress.  In particular, many of Capital City's arguments hinge on the lack of details in Perez's complaint about Capital City's conduct, duty, and knowledge.  For example, Capital City argues that because Perez was never a student at Capital City and Coleman's conduct took place outside of the school context, Capital City did not breach any duty to Perez.  Capital City also argues that as a charter school it is immune from negligence suits unless it engaged in "gross negligence."  And it argues that its conduct was not extreme and outrageous such that it would be liable for intentional infliction of emotional distress.

Perez's proposed amended complaint does not appear to be futile with respect to her claims against Capital City for gross negligence or intentional conduct because it provides more detailed allegations respecting Capital City's conduct, duty, and knowledge.  *See generally* Proposed First Amended Compl.  For instance, the proposed first amended complaint states that "Between 2006 and 2009, Coleman brought [Perez] to his classroom at Capital City over the summers before school started and on weekends, while other employees and teachers were present on campus."  *Id.* ¶ 64.  This allegation undercuts Capital City's argument that Perez never alleged that any conduct took place at Capital City or that Capital City did not owe Perez any duty.  *See*, *e.g.*, *Doe v. Duke Ellington Sch. of Arts Project*, No. 21-cv-1762, 2022 WL 2274349, at *4 (D.D.C. June 23, 2022) (holding at motion to dismiss stage that school officials with supervisory authority had some duty to protect students from sexual harassment); *see also Roe v. Wilson*, 365 F. Supp. 3d 71, 86–87 (D.D.C. 2019) (denying motion to dismiss where plaintiff alleged that school officials knew of sexual assault by teacher); *Martin v. Am.*

*Midstream Partners, LP*, 386 F. Supp. 3d 733, 742 (E.D. La. 2019) ("An employer's continued inaction after receiving an employee's complaints of harassment may give rise to a claim for intentional infliction of emotional distress." (internal quotation marks omitted)); *Wahlstrom v. Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506, 529 (S.D.N.Y. 2000) (explaining that "sexual harassment can, if sufficiently outrageous and extreme, give rise to a claim for intentional infliction of emotional distress"). The proposed first amended complaint also details additional allegations about the information provided to Capital City about Coleman's conduct with Perez. *Id.* ¶¶ 61–62, 69–71. These additional allegations are sufficient for the counts against Capital City to survive dismissal. In other words, amendment to the complaint to include these additional details proves the difference between the success or failure of Perez's claims against Capital City. Therefore, amendment is not futile with respect to Perez's gross negligence and intentional tort claims against Capital City.

Be that as it may, the Court concludes that amendment would be futile with respect to Perez's simple negligence claims against Capital City. As Capital City points out, under D.C. law "[a] public charter school . . . shall be immune from civil liability . . . for any act or omission within the scope of their official duties unless the act or omission: (i) Constitutes gross negligence [or] (ii) Constitutes an intentional tort." D.C. Code 38-1802.04(c)(17); *see also A.M. v. Bridges Pub. Charter Sch.*, 292 F. Supp. 3d 441, 444 (D.D.C. 2018) (dismissing negligence claims based on D.C. Code § 38–1802.04(c)(17)). And Perez concedes that Capital City is immune from simple negligence claims under D.C. law. *See* Pl.'s Opp'n Capital City at 5–7. To the extent that Perez's proposed first amended complaint seeks damages in Counts VIII and Count IX for Capital City's merely negligent conduct—as opposed to grossly negligent or

intentional conduct—amendment to add those Counts appears to be futile under D.C. law. Accordingly, the Court will not grant Perez leave to amend the complaint in that respect.

For the same reason, the Court grants Capital City's motion to dismiss Counts II (negligent supervision and hiring/retention), III (negligence), and VI (negligent infliction of emotional distress) of the original complaint.  From the Court's reading of the initial complaint, it appears that each of those counts, alleges that Capital City's conduct was negligent, rather than grossly negligent.  Under D.C. law, Capital City is immune from suit on each of those counts because they do not rise to the level of gross negligence or intentional conduct.  Accordingly, those counts are dismissed as against Capital City.

In summary, the Court grants Perez's motion for leave to file an amended complaint with respect to each of her claims except for her (1) Title IX claim, and (2) simple negligence claims against Capital City.  Because the Court grants Perez leave to amend her complaint with respect to her gross negligence and intentional tort claims, Capital City's motion to dismiss is moot with respect to Perez's claims based on gross negligence or intentional tort and the Court will not address the arguments made in relation to those counts.[3]

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** KIPP DC's motion to dismiss (ECF No. 29), **GRANTS IN PART** and **DENIES IN PART** Capital City's motion to dismiss (ECF No. 30), and **GRANTS IN PART** and **DENIES IN PART**

---

[3] Defendants have also moved to stay discovery pending resolution of their motions to dismiss.  *See* KIPP DC Mot. Stay Discovery, ECF No. 47; Capital City Mot. Stay Discovery, ECF No. 48.  Because the Court has now resolved Defendants' motions to dismiss, Defendants' motions are moot.  In any event, the Court observes that it has already extended the discovery deadline by 120 days, *see* Min. Order (March 12, 2024), and per the parties' request, *see* Joint Mot. Extension of Time, ECF No. 54, the Court will extend the discovery deadlines by another 120 days, which should provide the parties with ample time to complete discovery.

Perez's motion for leave to amend (ECF No. 37).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 25, 2024                                    RUDOLPH CONTRERAS

                                                        United States District Judge